UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 3 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PAULA REYNOLDS | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. B-03-056 |
| VS. | § | |
| | § | (JURY REQUESTED) |
| THE CITY OF LOS FRESNOS, TEXAS, | § | |
| TOM ANDREWS, MANUEL ABREGO, | § | |
| JUAN C. SIERRA, IDA GARCIA, | § | |
| MIGUEL MENDOZA, RAY GARCIA, | § | |
| GONZALO ACEVEDO, AND PAM | § | |
| DENNY INDIVIDUALLY AND IN | § | |
| THEIR OFFICIAL CAPACITIES | § | |
| *Defendants* | § | |

## DEFENDANT THE CITY OF LOS FRESNOS, TEXAS'
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, CITY OF LOS FRESNOS, Defendant in the above-styled and numbered cause and files this its Motion for Summary Judgment and in support thereof, would respectfully show unto the court as follows:

## I.

## STATEMENT OF THE CASE

Plaintiff, Paula Reynolds brings a whistleblower and 1st Amendment claim as a result of her termination by the City of Los Fresnos. Plaintiff has sued the City of Los Fresnos alleging she was wrongfully terminated for making a good faith report of illegal activity by a city employee and for making comments about the create/recreate documents concerning the Home Loan Program.

02151\MTNS\MSJ

Specifically, Plaintiff claims that she reported City Secretary Pam Denny's use of a city credit card to then-Interim Chief of Police Adrian Cabrera, and later to then mayor Manuel Abrego, Finance Director Ruth Hernandez and Alderwoman Ida Garcia-Cortez. This "report" allegedly resulted in Plaintiff's termination some fourteen months later. However, Plaintiff's whisteblower claim fails because (1) Plaintiff did not make a report of a violation of law as that has been described in caselaw; (2) Plaintiff's "report" was not to an appropriate law enforcement authority as that has been described by caselaw; and (3) the timing between her "report" and the adverse actions alleged is too attenuated to be the only evidence of a causal connection..

Secondly, Plaintiff alleges the City of Los Fresnos violated her First Amendment right of free speech when she complained of an assignment given to her during a City's executive session. However, Plaintiff's First Amendment claim must fail as it is not a comment on a matter of public concern and the speech did not occur in a public forum. Rather, she was complaining about the assignment, not making a speech. Thus, it was a personnel matter and not a matter of public concern. Plaintiff was terminated as a result of numerous complaints about her work and conduct at the workplace. For the foregoing reasons, Defendant is entitled to judgment as a matter of law.

## II.
## EXHIBITS

A.      **Wells Fargo statement for Pam Denny's business account**
B.      **Affidavit of City Secretary Pam Denny**
C.      **Affidavit of former interim Chief of Police Adrian Cabrera**
D.      **Affidavit of Alderwoman Ida Garcia Cortez**
E.      **Letter of suspension**
F.      **Police report related to Plaintiff's suspension**
G.      **Letter of termination**
H.      **Pam Denny's check reimbursing the City**
I.      **The City's Policy Manual**

## III.
## FACTUAL BACKGROUND

Plaintiff Paula Reynolds was employed by the City of Los Fresnos as an administrative assistant from October 1997 to February 2002. At all times relevant hereto, Plaintiff worked in the City of Los Fresnos Finance Department.

On November 13, 2000, Pam Denny, the City Secretary inadvertently used her city credit card while making an internet purchase for a radar detector for personal use. (Ex. A,B.) As part of Plaintiff's duties, Plaintiff reviewed the invoice for this purchase. (Ex. A, B.) Plaintiff went to Ms. Denny's office who, at the time was speaking with Interim Police Chief Cabrera, and inquired if his Department had made the purchase. He indicated they had not. Ms. Denny suggested Plaintiff contact the credit card company to acquire more information about the purchase. Plaintiff returned and indicated the purchase was for a radar detector. At that point, Ms. Denny recalled she had made a purchase of a radar detector for her daughter. Ms. Denny realized she used the wrong credit card, since she has a personal account with Wells Fargo and the cards are identical except for the account numbers. Ms. Denny made out a check to the City the same day. (Ex. C, H.)

3

In January 2002, the City discovered that the documentation in the files of the Home Loan Program was not complete. The Board of Aldermen asked Plaintiff to complete the necessary documents needed to comply with the Home Loan Program. Shortly thereafter, the Board approved Plaintiff's promotion to interim Finance Director, while the City looked for a permanent director. Plaintiff received a raise while she held this position. However, shortly thereafter, the City hired a permanent director and Plaintiff returned to her administrative assistant position. Despite being directed to do so, Plaintiff failed to return herself to her administrative assistant's pay. She continued to overpay herself for approximately six weeks and never repaid the excess salary to the City.

In February 2002, Mayor Pro Tem and interim City Administrator Ida Garcia Cortez terminated Plaintiff after concerns grew about Plaintiff's competence and improprieties. (Ex. D, G.)

### III.
### ARGUMENTS AND AUTHORITIES

**A.    The Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(c) provides that a summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, the rule permits summary judgment even if the parties disagree as to some facts. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. *Id.* at 248. Should it appear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the district court should grant summary judgment. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *accord Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, the defendant is entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *International Ass'n of Machinists and Aerospace Workers No. 2504 v. International Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987) ("[M]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment"); *Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

## B.    Whistleblower Claim

The Whistleblower Act prohibits a governmental employer from suspending or terminating "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002 (Vernon Supp. 1998). "Good faith" in the Whistleblower Act means that (1) the employee believed that the conduct reported was a violation of law, and (2) the employee's belief was

reasonable in light of the employee's training and experience. *See Wichita County v. Hart*, 917 S.W.2d 779, 784-85 (Tex.1996).    Plaintiff bears the burden of proof in establishing her whistleblower action. TEX. GOVT. CODE §554.004.

   **Plaintiff's alleged report.** Plaintiff claims that the billing inquiry about the radar detector she made to Pam Denny and Interim Chief of Police Adrian Cabrera constitutes a report of illegal activity which would entitle her to protection under the Whistleblower Act. (Ex. A at Para. IV.) However, this conversation was nothing more than a casual inquiry which Plaintiff made as part of her job as administrative assistant in the finance department.

   Plaintiff's inquiry was not a report of illegal activity that would entitle her to protection as a whistleblower.  As the finance department's administrative assistant, she was simply attempting to determine what city account should pay for this charge, as noted on the invoice itself wherein Plaintiff wrote "Pam- which acct. should I use for the $405.00?  Thanks!" (Ex. A, B.)  She asked the interim police chief if perhaps the police department had ordered the radar detector in order to determine whether the police department's account should be billed for this purchase; it was evident to the interim chief that Plaintiff was asking him a billing question, and not reporting any crime. (Ex. C.)

   The Texas Supreme Court has held what kind of communication constitutes a report under the Texas Whistleblower Act.  "Neither holding a press conference nor making a complaint to an employer was a 'report' that implicated the protection afforded by the Whistleblower Act." *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 144-46 (Tex. 1995).

In the case at bar, Plaintiff's communication was nothing more than a question , therefore, Defendants are entitled to judgment as a matter of law.

**Violation of law**. The Whistleblower Act defines "law" to mean: a state or federal statute; an ordinance of a local governmental entity; or a rule adopted under a statute or ordinance. TEX. GOV'T CODE § 554.001(1). Plaintiff alleges that the City terminated her because she reported Ms. Denny's improper use of the City's credit card for a personal purchase. This is not a violation of law as required to gain the protection of the Whistleblower Act. There must be some law prohibiting the complained of conduct, otherwise, every complaint, grievance, or misbehavior could support a claim under the Whistleblower Act. *Llanes v. Corpus Christi Ind. Sch. Dist.*, 64 S.W.3d 638 (Tex.App.–Corpus Christ 2001, pet. denied) Ms. Denny's inadvertent use of the City's credit card does not violate a statute, ordinance, or rule adopted by statute. The complained of conduct does not even violate the City internal policies. (Ex. I).

**Plaintiff would have been terminated regardless of report.** Plaintiff bears the burden of establishing that her termination would not have resulted "but for" protected whistleblowing. *Department of Human Services v. Hinds*, 904 S.W.2d 629 (Tex. 1995); *Upton County, Tex. v. Brown*, 960 S.W.2d 808 (Tex. Ct. App - El Paso. 1997). The "employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Hinds*, 904 S.W.2d at 636. The competent summary judgment evidence shows that Plaintiff will not be able to meet this burden. Defendant terminated Plaintiff for reasons other than any alleged report, thus Defendant is entitled to summary judgment. TEX. GOVT. CODE § 554.004; *Johnson*, 891 S.W.2d at 646.

Alderwoman Ida Garcia Cortez, in her position as interim city administrator, terminated Plaintiff in February 2002. (Ex G.) This was fourteen months after Plaintiff's billing inquiry As set forth below, Cortez's decision to terminate Plaintiff was altogether unrelated to these actions by

Plaintiff, or any other purported attempt by Plaintiff to report illegal activity by a city employee. (Ex. D.)

In February 2001, Plaintiff was appointed by the aldermen to act as interim finance director while the city looked for a permanent finance director. This promotion also came with a raise, to which Plaintiff was entitled as long as she held the interim finance director's position. However, after a permanent finance director was hired, Plaintiff failed to return herself to her administrative assistant's pay, despite being directed to do so. She continued to overpay herself for approximately six weeks and never repaid the excess salary to the city.

Plaintiff additionally engaged in other improprieties. She opened an unauthorized account in the city's name and placed several orders for personal items on this account from November 2001 to January 2002. The city was eventually sent collection notices as Plaintiff failed to pay for these unauthorized purchases on this unauthorized account; however, because Plaintiff claimed the account was opened "on the city's behalf," the city was held liable for these charges.

Additionally, concerns grew over Plaintiff's competence. She was unable to carry out her job responsibilities-not properly making payroll deductions, not properly processing invoices, and not properly keeping track of vacation and sick time-all to the detriment of the City and its employees. (Ex. D)

In January 2002, Plaintiff was given one day's unpaid suspension by Interim City Administrator Ida Garcia Cortez. (Ex. D) However, as Plaintiff was employed in the city's finance department, she was able to manipulate her paycheck so that she never lost that day's pay. (Ex. D.) Plaintiff was terminated the following month.

Plaintiff's termination had nothing to do with any alleged report of illegal activity which she

8

claims she made. (Ex. D)  The competent summary judgment evidence establishes that Plaintiff was terminated for reasons unrelated to any alleged  whistleblower's report or complaint of an assignment. Plaintiff carry her burden in this regard. Accordingly, Defendant is entitled to summary judgment.

### D.    First Amendment Claim

The first consideration in a First Amendment freedom of speech analysis is for the Court to determine whether the speech is constitutionally protected.  In order to maintain a claim under the First Amendment, Plaintiff must show that her speech was on a matter of public concern.  This inquiry is one of law, not fact.  *Id.* at 148.  To do this, the Court must consider the content, form and context of the speech.  *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct.1684, 1690, 75 L.Ed.2d 708.

Plaintiff alleges that she was asked by members of the board to "recreate documents" regarding the 1998 Home Loan Program.  Apparently, the City was going to be audited by the federal government and the Board of Aldermen wanted the Plaintiff to "go fix the problem."  The problem being the City's lack of follow-up in completely documenting the files of the persons who were receivng these loans.  Plaintiff reported her misgivings of this assignment to Alma Villareal, the Community Development Director for the City.  Plaintiff claims as a result of her complaining of this assignment, Plaintiff was terminated.

Making a complaint about an assignment is not a matter of public concern.  It is just a complaint.  The City asked Plaintiff "to go fix the problem."  Plaintiff was asked to fill out and/or collect the necessary information to document the files as required by the government.  The City did not ask the Plaintiff to falsify the documents, but to complete the work that had not been done.

### E.    Defendant is Entitled to Summary Judgment as to Claims for Punitive Damages

Plaintiff seeks punitive damages.  Punitive damages are not available under the Texas Tort Claims Act, nor under the Whistleblower Act.  TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.024, §554.003 (Vernon's 2000).

### G.    Defendants are entitled to Official Immunity

Official immunity is a common-law defense to suit and personal liability provided to governmental employees. *Campbell v. Jones*, 264 S.W.2d 425, 427 (Tex. 1954).  The doctrine of official immunity evolved out of the public concern that "if administrative officials are held liable for their negligence, the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." *Austin v. Hale*, 711 S.W.2d 64, 68 (Tex.App.-Waco 1986, no writ).  An official is immune so long as he is:

(1) performing discretionary duties;

(2) within the scope of his authority; and

(3) is acting in good faith. *Id.*

Typically an official's acts are classified as discretionary or  ministerial.  Discretionary actions are those which require personal deliberation, decision and judgment, while ministerial actions require obedience to orders or the performance of a duty as to which the actor is left no choice. *Wyse v. Depart. of Public Safety,* 733 S.W.2d 224 (Tex. App.-Waco 1987, writ ref'd n.r.e.)*; Torres* , 380 S.W.2d at 34; *Austin, supra.*

Tom Andrews as the City Attorney, Manuel Abrego, Ida Garcia-Cortez, Miguel Mendoza, Juan C. Sierra, Gonzalo Acevedo, and Ray Garcia as aldermen of the board, and Pam Denny as City Secretary all performed in good faith discretionary acts within the scope of their authority.

Specifically, the aldermen in good faith made the decision to give Plaintiff the assignment to complete or collect the necessary documents regarding the Home Loan Program. This assignment was within their authority.

## IV.

## CONCLUSION

Defendant should be granted summary judgment against Plaintiff inasmuch as the competent summary judgment shows that Plaintiff is not entitled to protection under the Whistleblower's Act as she made no good faith report of illegal activity to an appropriate law enforcement authority, Plaintiff's complaint of an assignment is not protected First Amendment speech, and furthermore her termination was for reasons altogether unrelated to any alleged "whistleblower" report or complaint of an assignment.

WHEREFORE, PREMISES CONSIDERED, Defendant CITY OF LOS FRESNOS requests this Court grant summary judgment in its favor on all claims asserted by Plaintiff, that Plaintiff take nothing by this suit, that all taxable costs of court be taxed against Plaintiff, and for all other relief to which Defendant may be justly entitled.

Signed on September _30_, 2004

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
1534 E. 6th Street, Suite 200
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
1534 E. 6th Street, Suite 200
Telephone:  (956) 541-1846
Facsimile:  (956) 541-1893

By: _____
Eileen M. Leeds
State Bar No. 00791093
USDC Adm. No. 16799
Analisa Figueroa
State Bar No. 24040897
USDC Adm. No. 38197
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing, Defendant's Motion for Summary Judgment, has been served on all counsel of record as follows:

*Via CMRRR: 7003 1010 0003 6963 3895*
Ms. Teri Danish
Rodriguez, Colvin & Chaney, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520

Mr. Michael Rodriguez
Attorney and Counselor at Law
1000 E. Madison Street
Brownsville, Texas 78520

by mailing same, certified mail, return receipt requested, on September 30 , 2004.

_____
Eileen Leeds

## WELLS FARGO
PO BOX 10347
DES MOINES IA 50306-0347

00440008740900474305000052925364

| ACCOUNT NUMBER | | 4743 0900 0529 2536 |
|---|---|---|
| NEW BALANCE | | $594.09 |
| MINIMUM PAYMENT DUE | | $44.00 |
| PAYMENT DUE DATE | | 12/24/00 |
| AMOUNT ENCLOSED | $ | 514.09 |

☐ Check here if you have a change of address or telephone number. Please note any changes on the front of the payment subset.

CORPORATE CARD          AZE
PO BOX 9272
DES MOINES IA 50306-9272

PAM DENNY
CITY OF LOS FRESNOS
200 N BRAZIL
LOS FRESNOS TX 78566-3840      785

Detach the top portion and return with payment using the enclosed envelope. Payments received before 12:00 a.m. at the mailing address shown above will be credited to your account as of the day of receipt. Payments received at any other location may be subject to a delay in crediting of up to 5 days.

## WELLS FARGO

**Your resources for help:** Please call 800-231-5511 or in Des Moines (515)222-4115 or fax (515)222-9021. Department hours are Monday through Friday 8:00 a.m. to 9:00 p.m. CST. To report a lost or stolen card please call 1-800-247-9101 Send inquiries to: CORPORATE CARD P.O. BOX 10347 DES MOINES IA 50306

### Account Activity

| | |
|---|---|
| Previous Balance | $0.00 |
| Payments | $0.00 |
| Credits | $0.00 |
| Purchases & Other Charges | $594.09 |
| Cash Advances | $0.00 |
| Cash Advance Fees | $0.00 |
| FINANCE CHARGE | $0.00 |
| New Balance | $594.09 |

### Account Information

| | |
|---|---|
| as of Statement Date | 11/23/00 |
| Account Number | 4743 0500 0529 2536 |
| Payment Due Date | 12/24/00 |
| Credit Limit | $4,000.00 |
| Available Credit | $3,105.00 |
| Disputed Amount | $0.00 |
| Days in Billing Cycle | 30 |

### TRANSACTIONS

| Transaction Date | Posting Date | Transaction Description | Reference Number | Amount |
|---|---|---|---|---|
| 11/13 | 11/13 | VALENTINE RESEARCH    515-254-2500 OH | 24445D0N877SNDW4Q | 403.00 |
| 11/23 | 11/23 | MARRIOTT HOTELS AUSTIN AUSTIN TX | 24510437NR231XD.JXQ | 298.51 |
| 11/23 | 11/23 | MARRIOTT HOTELS AUSTIN AUSTIN TX | 24510437NR231XD.JXY | 223.08 |

*Internet - P.M. Denny*

### News Scard

WITH YOUR WELLS FARGO CORPORATE MASTERCARD THERE'S NO NEED FOR ADDITIONAL CAR RENTAL INSURANCE. WHEN YOU CHARGE YOUR CAR RENTAL TO YOUR WELLS FARGO CORPORATE CARD, YOU HAVE PRIMARY COLLISION/LOSS DAMAGE COVERAGE FOR UP TO 31 DAYS, ELIMINATING THE NEED FOR FILING INSURANCE CLAIMS WITH YOUR INSURER.

### FINANCE CHARGES

| | Rates on Current Balances Purchases | Current Balances Cash Advances | Rate on Old Balance | Average Daily Balance on Old Balance | Current Avg Daily Bal Sub to Finance Charge | Total Periodic Finance Charge | Cash Advance Transaction Fees | Total Finance Charge | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|---|---|
| Monthly Periodic Rate | 1.558% | 1.558% | .000% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| Corresponding APR | 19.500% | 19.500% | .000% | | | | | | |



*Pam - which acct should I use for the $405⁰⁰? Thanks*


EXHIBIT
A
ALL-STATE LEGAL®



CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT

**STATE OF TEXAS**

**COUNTY OF CAMERON**

BEFORE ME, the undersigned authority, personally appeared **Pam Denny** who, being by me duly sworn, deposes as follows:

I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the Custodian of Records for the **City of Los Fresnos**. Attached hereto are 1 page(s) of records. These said records are kept in the regular course of business at the office the **City of Los Fresnos.** It was in the regular course of business at the office of **the City of Los Fresnos** for a custodian, representative or employee with knowledge of the acts, events or conditions to make the record or to transmit information hereof to be included in such record and such record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter. The records attached hereto are exact duplicates of the original. The source of information or the method or circumstances of preparation of information in this record indicates no lack of trustworthiness of same.

_Pam Denny_
**Pam Denny**

SUBSCRIBED AND SWORN TO by the said witness before me, the undersigned authority, on this the ___7th___ day of November, 2002.

_Yolanda Perez_
Notary Public in and for the State of Texas

YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005

CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 138TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

---

### AFFIDAVIT OF PAM DENNY

---

THE STATE OF TEXAS      §
                        §
COUNTY OF CAMERON       §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Pam Denny who being by me sworn under oath deposed and stated as follows:

1.   "My name is Pam Denny, I am over 21 years of age and competent to make this affidavit and everything said herein is true and correct based upon my personal knowledge.

2.   I am the City Secretary for the City of Los Fresnos.

3.   On December 7, 2000, I was in my office speaking with then Interim Chief of Police Adrian Cabrera.

4.   Paula Reynolds, who worked in the finance department, came into my office while I was speaking with Cabrera.

5.   In my presence, Reynolds first asked Cabrera if he had ordered a "radar," to which he responded that he had not.

6.   Reynolds was trying to determine who had placed this particular order on the city's credit card.

7.   I did not know what order she was speaking about and told her to call the credit card company to find out about this charge. Ms. Reynolds then left my office, presumably to make this phone call.



EXHIBIT
B
ALL-STATE LEGAL®

8.  When she returned to my office several minutes later, Reynolds said she had learned the charge was for a radar detector ordered over the internet.

9.  I then recognized the charges and told Reynolds the radar detector was a personal purchase and I must have accidently used the my city Wells Fargo credit card instead of my personal Wells Fargo credit card.

10. Chief Cabrera said he would let the mayor know what happened so that the city could decide what it wanted to do. He didn't take or made any police reports or start any investigation, to my knowledge.

11. I called the credit card company to see if they could transfer this charge from the city's account to my personal account but they were unable to do so. That same day, I reimbursed the city for this purchase.

12. The city decided to suspended me for two weeks without pay and placed me on probation for sixty days. No criminal charges were ever brought against me as the city handled this matter administratively.

13. I have reviewed a copy of the relevant Wells Fargo bill and recognize the handwriting on it to be Paula Reynolds'. These notes say in part, "Pam- which acct. should I use for the $405.00? Thanks!"

Further Affiant sayeth naught.

_Pam Denney_
Pam Denny

SUBSCRIBED AND SWORN TO BEFORE ME on the ____25th____ day of _September____, 2002, to certify which witness my hand and official seal.

_Yolanda Perez_
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

My Commission Expires: _April 9, 2005_

YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005

2

CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 138TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

---

### AFFIDAVIT OF ADRIAN CABRERA

---

THE STATE OF TEXAS      §
                                            §
COUNTY OF CAMERON   §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Adrian Cabrera who being by me sworn under oath deposed and stated as follows:

1.    "My name is Adrian Cabrera, I am over 21 years of age and competent to make this affidavit and everything said herein is true and correct based upon my personal knowledge.

2.    I was Interim Chief of Police for the City of Los Fresnos from about September 2000 until February 2001.

3.    During this time and probably in December 2000, Paula Reynolds brought me a copy of an invoice for a radar detector and wanted to know whether the police department had ordered it.

4.    Ms. Reynolds brought this matter to me as a billing question, as she was employed in the finance department.

5.    Pam Denny also happened to be present. Ms. Denny said the invoice was hers and said she must have accidently used the city's credit card to make this purchase.

6.    At no time did Ms. Reynolds ever approach me to report any criminal wrongdoing by Ms. Denny or anyone else. I did not take her comments regarding the invoice as being a report of a violation of law. It was clear to me that she was trying to



EXHIBIT
C

determine which department had ordered the radar detector, as part of her job in the

finance department.

7.    At no time did I ever start a criminal investigation regarding this Denny's use of a

city credit card; I do not remember taking any statements or reports.

8.    I simply informed the mayor of the situation, for his information so the City could

decide how it wanted to handle this matter.  It was handled administratively and I

know of no criminal charges ever brought against Ms. Denny.


Further Affiant sayeth naught.


_____
Adrian Cabrera


SUBSCRIBED AND SWORN TO BEFORE ME on the _____13th_____ day of

___September___, 2002, to certify which witness my hand and official seal.


_____
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

Robin S. Ochoa
Notary Public, State of Texas
My Commission Expires
SEPTEMBER 03, 2005

My Commission Expires:

_____9-3-05_____

CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 138TH  JUDICIAL DISTRICT |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

---

## AFFIDAVIT OF IDA GARCIA-CORTEZ

---

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Ida Garcia-Cortez who being by me sworn under oath deposed and stated as follows:

1.      "My name is Ida Garcia-Cortez, I am over 21 years of age and competent to make this affidavit and everything said herein is true and correct based upon my personal knowledge

2.      I'm giving this affidavit in connection with the above referenced lawsuit wherein Paula Reynolds is a plaintiff bringing a Whistleblower claim against the City of Los Fresnos, Texas.

3.      I am personally aware of why Paula Reynolds was terminated from the City of Los Fresnos as I am the person who terminated her.

4.      I am aware of Paula Reynolds allegations in this lawsuit wherein she alleges she was terminated because of a report she made about a violation of law City Secretary Pam Denny is to have committed, regarding the misuse of a city credit card.  I am further aware of the fact that Paula Reynolds is claiming that allegedly in retaliation for making this report, she was terminated.



5.      I can say unequivocally that the reason I terminated Paula Reynolds had absolutely nothing to do with any alleged report she made to anyone regarding any violation of law committed by City Secretary Pam Denny or anyone else.

6.      At the time I terminated Paula Reynolds, I was Mayor Pro-Tem and Acting Interim City Administrator. It was in my position as Acting Interim City Administrator that I terminated Paula Reynolds. That termination occurred on February 7, 2002.

7.      I made a written report complaining about Pam Denny's deficiencies and this report was provided to the city's attorneys on January 17, 2001.

8.      In my report, I complained about some of the same things Paula Reynolds later complained about in her hand written letter of August, 2001, including the misuse of a city credit card. As a result of my complaint in January, 2001 and other complaints made at that time, Ms. Denny was disciplined by the city council and she reimbursed the city for the charges made to the city credit card.

9.      After Dan Reyna became City Administrator, and in August 2001, he started collecting complaints about Pam Denny as a basis for his intent to try and terminate Ms. Denny and this is when Paula Reynolds made her hand written report. Even though there is no date on it, it is my understanding from reading Chief Cavazos' affidavit that  he received Paula Reynolds' hand written report in August of 2001 when he received other complaints about Pam Denny which were dated August, 2001.

10.     These complaints were primarily about issues that had already been addressed with Pam Denny and had already been resolved which resulted in her discipline and reimbursement to the city.

11.    I became Acting Interim City Administrator in December of 2001 and was replaced in March of 2002 when Ivan Welker came in as the full time City Administrator.

12.    During the time I was Acting Interim City Administrator, it came to my attention that Paula Reynolds was unable to satisfactorily perform her job duties. As a result of an unsatisfactory job performance, she was suspended and was supposed to have deducted one day of pay from her paycheck and since she was in the finance department she would have been the person to have made this deduction. It later was brought to my attention that this was never deducted from her pay as ordered.

13.    Since Paula Reynolds was an at will employee and pursuant to the Personnel Policy of the City of Los Fresnos, I then terminated her as an at will employee as set forth in a letter of termination dated February 7, 2002. I was fully well aware of the reports or comments that were being made about Pam Denny by various employees, including Paula Reynolds. However, my decision to terminate Paula Reynolds had absolutely nothing to do with her alleged report about Pam Denny and Paula Reynolds' termination was in no way in retaliation for her making any report about Pam Denny or anyone else."

Further Affiant sayeth naught.

_Ida Garcia-Cortez_
Ida Garcia-Cortez

SUBSCRIBED AND SWORN TO BEFORE ME on the _____9 th_____ day of _____Sept._____, 2002, to certify which witness my hand and official seal.

_Yolanda Perez_
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005

My Commission Expires:

_April 9, 2005_

3



TO:          PAULA REYNOLDS

FROM:      MAYOR PRO-TEM IDA GARCIA-CORTEZ

DATE:       JANUARY 4, 2001

RE:           SUSPENSION


This is to notify you that you will be suspended for one (1) day without pay, and with a warning, on Monday, January 7, 2002.

If this condition should continue you may be terminated.



CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

---

### BUSINESS RECORDS AFFIDAVIT

---

**STATE OF TEXAS**

**COUNTY OF CAMERON**

BEFORE ME, the undersigned authority, personally appeared **Pam Denny** who, being by me duly sworn, deposes as follows:

I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the Custodian of Records for the **City of Los Fresnos**. Attached hereto are 1 page(s) of records. These said records are kept in the regular course of business at the office the **City of Los Fresnos.** It was in the regular course of business at the office of **the City of Los Fresnos** for a custodian, representative or employee with knowledge of the acts, events or conditions to make the record or to transmit information hereof to be included in such record and such record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter. The records attached hereto are exact duplicates of the original. The source of information or the method or circumstances of preparation of information in this record indicates no lack of trustworthiness of same.

_Pam Denny_

**Pam Denny**

SUBSCRIBED AND SWORN TO by the said witness before me, the undersigned authority, on this the ___7th___ day of November, 2002.

_Yolanda Perez_

Notary Public in and for the State of Texas

YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005

# Los Fresnos Police Department
## Incident Narrative
### 02-00008

On Friday January 4, 2002, at about 9:10AM, reporting officer was dispatched to a past verbal fight at the city Hall Office. Upon arrival at the city hall Utility Clerk and asst. City Secretary Yolanda Perez made contact with reporting officer. She informed that she wanted to file charges against one of her co-workers Paula Reynolds for using vulgar and abusive language toward her. Yolanda Perez informed reporting officer that Paula had call her a "bitch" in the presents of customers and other employee's.

Reporting officer proceeded to take the report and had Yolanda Perez make a written statement about the incident. On her statement she includes all the witness that were present at the time of the incident. Statements were also from the witness and are include in the case file. Yolanda Perez also signed the complainant against Paula Reynolds for disorderly conduct. After taking the report Investigator and reporting officer made contact with Paula in her office. She also wanted to file charges against Yolanda for threat made the previous day. She was asked to go by the police department to make the report. When we were in Paula's office she did admit to calling Yolanda a "bitch".



EXHIBIT

F

CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

## BUSINESS RECORDS AFFIDAVIT

STATE OF TEXAS

COUNTY OF CAMERON

     BEFORE ME, the undersigned authority, personally appeared **Chief Johnny Cavazos** who, being by me duly sworn, deposes as follows:

     I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

     I am a Custodian of Records for **Los Fresnos Police Department.** Attached hereto are 1 page(s). These said records are kept in the regular course of business at the office of **Los Fresnos Police Department.** It was in the regular course of business at the office of **Los Fresnos Police Department** for a custodian, representative or employee with knowledge of the acts, events or conditions to make the record or to transmit information hereof to be included in such record and such record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter. The records attached hereto are exact duplicated of the original. The source of information or the method or circumstances of preparation of information in this record indicates no lack of trustworthiness of same.

_____
**Chief Johnny Cavazos**

     SUBSCRIBED AND SWORN TO by the said witness before me, the undersigned authority, on this the _____ day of December, 2002.

_____
Notary Public in and for the State of Texas

NORMA A. MARTINEZ
MY COMMISSION EXPIRES
September 11, 2004



February 7, 2002

Mrs. Paula Reynolds

You are an employee at-will pursuant to the Personnel Policy of the City of Los Fresnos.
This is to inform you that you are terminated immediately.

Sincerely,

Ida Garcia-Cortez
Mayor Pro-tem
City of Los Fresnos



CITY OF LOS FRESNOS ❖ 209 N. ARROYO BLVD. ❖ LOS FRESNOS, TEXAS 78566 ❖ TEL (956) 233-5768 ❖ FAX (956) 233-9879
THE CITY OF LOS FRESNOS IS AN EQUAL OPPORTUNITY EMPLOYER.

CAUSE NO.  2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| | § | |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

---

## BUSINESS RECORDS AFFIDAVIT

---

**STATE OF TEXAS**

**COUNTY OF CAMERON**

      BEFORE ME, the undersigned authority, personally appeared **Pam Denny** who, being by me duly sworn, deposes as follows:

      I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

      I am the Custodian of Records for the **City of Los Fresnos**.  Attached hereto are 1_ page(s) of records.  These said records are kept in the regular course of business at the office the **City of Los Fresnos**.  It was in the regular course of business at the office of **the City of Los Fresnos** for a custodian, representative or employee with knowledge of the acts, events or conditions to make the record or to transmit information hereof to be included in such record and such record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter.  The records attached hereto are exact duplicates of the original.  The source of information or the method or circumstances of preparation of information in this record indicates no lack of trustworthiness of same.

                                                      *Pam Denny*
                                                    **Pam Denny**

      SUBSCRIBED AND SWORN TO by the said witness before me, the undersigned authority, on this the ___7th___ day of November, 2002.

                                                         *Yolanda Perez*

YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005

                                Notary Public in and for the State of Texas





CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |

PAULA REYNOLDS                    §      IN THE 138TH DISTRICT COURT
                                  §
VS.                               §                  OF
                                  §
                                  §
THE CITY OF LOS FRESNOS           §      CAMERON COUNTY, TEXAS

## BUSINESS RECORDS AFFIDAVIT

**STATE OF TEXAS**

**COUNTY OF CAMERON**

BEFORE ME, the undersigned authority, personally appeared **Pam Denny** who, being by me duly sworn, deposes as follows:

I, the undersigned, am over 18 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the Custodian of Records for the **City of Los Fresnos**. Attached hereto are 1 page(s) of records. These said records are kept in the regular course of business at the office the **City of Los Fresnos.** It was in the regular course of business at the office of **the City of Los Fresnos** for a custodian, representative or employee with knowledge of the acts, events or conditions to make the record or to transmit information hereof to be included in such record and such record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter. The records attached hereto are exact duplicates of the original. The source of information or the method or circumstances of preparation of information in this record indicates no lack of trustworthiness of same.

_____
**Pam Denny**

SUBSCRIBED AND SWORN TO by the said witness before me, the undersigned authority, on this the ___7th___ day of November, 2002.

```
YOLANDA PEREZ
MY COMMISSION EXPIRES
April 9, 2005
```

_____
Notary Public in and for the State of Texas

# CITY OF LOS FRESNOS

# PERSONNEL POLICIES MANUAL

ROBERTO CEPEDA ............. MAYOR

MELANIE McCORMICK ..... MAYOR PRO TEM

IDA GARCIA ........................ ALDERWOMAN

TOM JONES ......................... ALDERMAN

MIGUEL MENDOZA ............ ALDERMAN

JUAN MUNOZ ...................... ALDERMAN

ADOPTED BY RESOLUTION NO. 17-99 ON Dec. 14 , 1999



EXHIBIT

1

ALL-STATE LEGAL

CITY OF LOS FRESNOS, TEXAS

PERSONNEL POLICIES MANUAL

TABLE OF CONTENTS

**CHAPTER 1 ~ INTRODUCTION**                                                                Page

| | | |
|---|---|---|
| § 1-01. | Objectives of Policies | 6 |
| § 1-02. | Equal Opportunity Policy | 6 |
| § 1-03. | Applicability and Scope | 6 |
| § 1-04. | Dissemination and Familiarity of Policies | 7 |
| § 1-05. | Administrative Authority | 7 |
| § 1-06. | Reservation of Rights | 7 |
| § 1-07. | Other Laws and Regulations | 7 |

**CHAPTER 2 ~ EMPLOYEE HIRING AND APPOINTMENT**

| | | |
|---|---|---|
| § 2-01. | Vacancies | 8 |
| § 2-02. | Announcement of Vacancies | 8 |
| § 2-03. | Applications | 8 |
| § 2-04. | Evaluation | 8 |
| § 2-05. | Disqualification | 8 |
| § 2-06. | Referral and Selection | 9 |
| § 2-07. | Authority for Appointment | 9 |
| § 2-08. | Types of Appointments | 9 |
| § 2-09. | Nepotism | 9 |
| § 2-10. | Residency Requirements | 9 |
| § 2-11. | Medical Examinations | 9 |
| § 2-12. | Emergency Temporary Appointments | 9 |
| § 2-13. | Promotion Policy | 10 |
| § 2-14. | Temporary Promotion | 10 |
| § 2-15. | Transfers | 10 |
| § 2-16. | Demotions | 10 |
| § 2-17. | Reemployment | 10 |
| § 2-18. | Employee Orientation | 10 |
| § 2-19. | Reasonable Accommodation for Disabilities | 11 |

**CHAPTER 3 ~ PROBATION**

| | | |
|---|---|---|
| § 3-01. | Probationary Period | 12 |
| § 3-02. | Benefit Eligibility | 12 |
| § 3-03. | Purpose of Probationary Period | 12 |
| § 3-04. | No Fault Separation | 12 |
| § 3-05. | Right of Appeal | 12 |

**CHAPTER 4 ~ PERFORMANCE EVALUATION AND COMPENSATION**

| | | |
|---|---|---|
| § 4-01. | Salary and Wage Plan | 13 |
| § 4-02. | Employee Pay Schedule | 13 |
| § 4-03. | Emergency Duty Pay | 13 |

Chapter 4 continued ...                                                        Page

    § 4-04.    Overtime and Compensatory Time    13
    § 4-05.    Employee Performance Evaluation    13
    § 4-06.    Termination Pay    14

CHAPTER 5 ~ ABSENCES AND LEAVES

    § 5-01.    Holidays    15
    § 5-02.    Vacation    15
    § 5-03.    Sick Leave    16
    § 5-04.    Bereavement Leave    17
    § 5-05.    Military Leave    17
    § 5-06.    Administrative Leave with Pay    17
    § 5-07.    Family and Medical Leave Act    18
    § 5-08.    Authorized Leave Without Pay    19
    § 5-09.    Absence without Leave    19

CHAPTER 6 ~ EMPLOYEE CONDUCT

    § 6-01.    Attendance    20
    § 6-02.    Work Standards    20
    § 6-03.    Political Activities    20
    § 6-04.    Solicitation    20
    § 6-05.    Outside Employment    21
    § 6-06.    Personal Appearance    21
    § 6-07.    Conflict of Interest, Solicitation, and Gifts    21
    § 6-08.    General Deportment    21
    § 6-09.    Sexual Harassment and Discrimination    21
    § 6-10.    Definition of Sexual Harassment    22
    § 6-11.    Reporting a Complaint    22
    § 6-12.    Resolving the Complaint    24
    § 6-13.    Grounds for Disciplinary Action    24

CHAPTER 7 ~ DISCIPLINE, APPEALS, AND GRIEVANCES

    § 7-01.    Work Ethic and Disciplinary Policy    26
    § 7-02.    Grounds for Disciplinary Action    26
    § 7-03.    Types of Disciplinary Action    26
    § 7-04.    Written Reprimand    26
    § 7-05.    Suspension    27
    § 7-06.    Disciplinary Demotion and Dismissal    27
    § 7-07.    Voluntary Grievance Procedure    27

CHAPTER 8 ~ NONDISCIPLINARY TERMINATION

    § 8-01.    Resignation    28
    § 8-02.    Layoff    28
    § 8-03.    Administrative Termination    28
    § 8-04.    Retirement    28

CHAPTER 9 ~ PERSONNEL RECORDS                                                          Page

    § 9-01.        Personnel Files and Records                              29
    § 9-02.        Personnel Reports                                       29

CHAPTER 10 ~ EMPLOYEE BENEFITS

    § 10-01.       Medical/Dental Benefits                                  30
    § 10-02.       Workers' Compensation Insurance                          30
    § 10-03.       Social Security                                         30
    § 10-04.       Unemployment Insurance                                   30

CHAPTER 11 ~ TRAVEL POLICY

    § 11-01.       Applicability of Travel Policy                           31
    § 11-02.       Authorization Required                                   31
    § 11-03.       Transportation Expenses                                  31
    § 11-04.       Food and Lodging                                         31
    § 11-05.       Entertainment                                           32
    § 11-06.       Travel Advances and Reports                              32

CHAPTER 12 ~ VEHICLE POLICY

    § 12-01.       Purpose of Vehicle Policy                                33
    § 12-02.       Applicability                                           33
    § 12-03.       Use of City Vehicles                                    33
    § 12-04.       Operation and Ridership                                  33
    § 12-05.       Safety, Maintenance and Care                             33
    § 12-06.       Vehicle Log                                             33

CHAPTER 13 ~ DRUG AND ALCOHOL POLICY

    § 13-01        Statement of Purpose and Scope                           34
    § 13-02.       Statement of Policy                                     34
    § 13-03.       Definition of Drug                                       34
    § 13-04.       Consequences of Violating the Drug and Abuse Policy      34
    § 13-05.       Possession and Use of and Search for Illegal and Unauthorized Items   34
    § 13-06.       Violations                                              35
    § 13-07.       Applicant Testing                                       35
    § 13-08.       Employee Testing                                        35
    § 13-09.       Disciplinary Action                                     36
    § 13-10.       Coordination with Law Enforcement Agencies              36

CHAPTER 14 ~ MISCELLANEOUS PROVISIONS

    § 14-01.       Safety                                                  37
    § 14-02.       Coffee Breaks                                           37
    § 14-03.       News Releases                                           37
    § 14-04.       Lunch Periods                                           37
    § 14-05.       Unauthorized or Improper Use of Official Badge or Uniform   37
    § 14-06.       Smoking in the Workplace                                 37
    § 14-07.       Aids in the Workplace                                    38

# CHAPTER 1

## INTRODUCTION

### § 1-01.  OBJECTIVES OF POLICIES

The purpose of these policies is to bring into the service of the City of Los Fresnos a high degree of understanding, cooperation, efficiency, and unity which comes through a systematic application of good procedures in personnel administration, and to provide a uniform policy for all employees, with all of the benefits that such a program insures. The basic objectives of these policies are:

    (a)  To promote and increase efficiency and economy in the service of the City.

    (b)  To provide fair and equal opportunity to all qualified applicants to enter City employment on the basis of demonstrated qualifications, merit and fitness as ascertained through fair and practical methods of recruitment and selection.

    (c)  To develop a program of recruitment, advancement, and tenure which will make employment with the City attractive as a career and encourage each employee to render his/her best services to the City.

    (d)  To establish and promote high morale among City employees by providing a good working environment, uniform personnel policies, opportunity for advancement, and consideration for employee needs and desires.

### § 1-02.  EQUAL OPPORTUNITY POLICY

Discrimination against any person in recruitment, examination, appointment, training, promotion, discipline, termination, or any other aspect of personnel administration because of political or religious opinions or affiliations; because of membership in employee organizations; because that person reports a violation of the law; or because of race, color, creed/religion, national origin, sex, age, disability, veteran status, or any other legally protected status, or other non-merit factors is prohibited.  Discrimination on the basis of age, sex, physical handicap or disability is prohibited except where specific age, sex, or physical requirements constitute a bona fide occupational qualification necessary to proper and efficient administration.

### §1-03.  APPLICABILITY AND SCOPE

These policies apply to all City employees, including employees of the Los Fresnos Police Department, unless specified otherwise by state law, ordinance, resolution, or policy approved by the City Council.  A person on retainer or under contract is not considered to be a City employee in the absence of a specific agreement to that effect.  These policies are not applicable to volunteer firefighters or reserve police officers.

Nothing in this manual shall be considered to create a property right in employment.  It should be understood that employment is for an indefinite period and is at-will for both employer and employee.  These policies are not intended to constitute an employment contract or entitlement to continued employment with the city.  The City Council reserves the right to amend these policies unilaterally and without notice.

## §1-04. DISSEMINATION AND FAMILIARITY OF POLICIES

All City employees shall be informed of the existence of these policies and each department head shall keep a copy available for reference by his/her employees. Employee manuals outlining the general personnel policies of the City will be furnished to all employees for their personal use and reference  The City Administrator shall require that all employees sign a statement stating that they have been furnished a copy of the employee manual outlining these policies. It shall be the employee's responsibility to become thoroughly familiar with such policies.

## § 1-05. ADMINISTRATIVE AUTHORITY

The City Council shall be responsible for establishing the policies under which personnel matters are to be administered. With the exception of matters reserved to the City Council by statute, or these policies, the general and final authority for personnel management rests with the City Administrator who shall develop, administer, and interpret the personnel policies and procedures as they apply to all departments and employees.

Each department head is responsible within the scope of his/her authority for enforcing the provisions of these policies and related rules and procedures in regard to matters involving his/her department. Department heads may prepare and enforce additional personnel policies within their department provided they are not inconsistent with these policies and have been approved by the City Administrator.

## § 1-06. RESERVATION OF RIGHTS

Although adherence to this policy is considered a condition of continued employment, nothing in this policy alters an employee's status. This policy shall not constitute nor be deemed a contract or promise of employment. Employees remain free to resign their employment at any time, for any or no reason, without notice, and the City retains the right to terminate any employee at any time, for any or no reason, without notice.

## § 1-07. OTHER LAWS AND REGULATIONS

The provisions of this policy shall apply in addition to, and shall be subordinated to, any requirements imposed by applicable federal, state, or local laws, regulations or judicial decision. Unenforceable provisions of this policy shall be deemed to be deleted.

## CHAPTER 2

## EMPLOYEE HIRING AND APPOINTMENT

### § 2-01. VACANCIES

Department heads shall notify the City Administrator immediately when job vacancies occur in their department. Only those vacancies allocated in the annual budget, or new positions authorized by the City Council, shall be filled. Vacancies may be filled through public announcement, promotions, transfers, demotions, or reinstatement.

### § 2-02. ANNOUNCEMENT OF VACANCIES

The Personnel Department shall publicly announce, by appropriate means, all job vacancies. Each job announcement, insofar as practicable, shall specify the title, salary, and nature of the job, the required qualifications, whether competition is open to the general public or restricted to City employees, and the application deadline. Each announcement shall also contain a statement affirming the City's commitment to a policy of equal employment opportunity. An adequate period of time shall be allowed in the selection process to insure fair and open competition for the vacant position.

### § 2-03. APPLICATIONS

Applications for employment or reinstatement shall be submitted on forms as prescribed by the City Administrator. Only applications officially received in the prescribed manner shall be considered. All information submitted in connection with applying for City positions is subject to verification. All applications received shall be kept on active file for a period of one (1) year.

### § 2-04. EVALUATION

The primary goal of the City is to fill vacancies with the most qualified applicants available. The City Administrator or the department head shall determine the most appropriate means of evaluating applicants against job requirements to identify the best persons qualified. Reference checks, interviews, verification of citizenship or employment eligibility, skills tests, written tests, driver's license checks, drug screening, and/or other screening procedures may be used as deemed appropriate and, in all cases, shall be consistent with applicable employment laws and regulations. Applicants for police department positions may be subject to medical/psychological examinations and criminal history checks where relevant. Applicants may be required to provide any work experience and qualifications information necessary to demonstrate compliance with the prescribed qualification requirements or proficiency.

### § 2-05. DISQUALIFICATION

An applicant shall be disqualified from consideration if he/she:

    (a) does not meet the qualifications necessary for performance of the duties of the position involved;

    (b) has made any false statement of fact on the application, depending upon the seriousness, willfulness and applicability of the false information to the position as determined by the City Administrator;

    (c) is an alien not lawfully authorized to work in the United States; or

    (d) would be in violation of the Citys' nepotism policy or laws.

An applicant may also be disqualified from consideration upon other reasonable grounds relating to the job requirements.

-8-

## § 2-06.  REFERRAL AND SELECTION

The referral of applicants to department heads for selection shall be in accordance with procedures developed by the City Administrator.  All department heads shall make a written report as to the disposition of all referred applicants to the Personnel Department for record keeping purposes.

## § 2-07.  AUTHORITY FOR APPOINTMENT

Except as otherwise provided by state law or City ordinance, the appointing authority for all appointive positions shall rest with the City Council.  The City Council may delegate hiring authority to the City Administrator.

Appointments shall be made based on the qualifications of applicants as ascertained through fair and practical selection methods.  It shall be the goal of the City to appoint the most qualified applicant to the position.

## § 2-08.  TYPES OF APPOINTMENTS

An appointment is ordinarily of indefinite duration and may be made to a full time or part time position.  A full time position is one where an employee works at least forty (40) hours in a regular work week schedule, and receives full benefits as provided by the City.  A part time position is one where an employee works less than forty (40) hours in a regular work week schedule, and does not receive full benefits offered by the City.  An appointment may be made for a limited term in unusual circumstances.  Temporary appointments are ordinarily limited to six (6) months or less and may be made to full time or part time positions requiring continuous, seasonal, or intermittent performance.

## § 2-09.  NEPOTISM

No person related within the second degree of either affinity (marriage) or third degree consanguinity (blood) to the Mayor, or any member of the City Council or City Administrator, shall be appointed to any office, position, or other services of the City.  This prohibition shall not apply to police officers or employees who have been employed by the City continuously for more than six (6) months prior to the election of such member of the City Council or Mayor. In addition, the City Administrator shall not approve for appointment to any supervisor's work group any person who is related within the second degree of affinity or consanguinity to that supervisor.

## § 2-10.  RESIDENCY REQUIREMENTS

There shall be no absolute residency requirements for a City employee except that those employees likely to be called to work in cases of emergency may be required to reside within reasonable commuting ranges of their places of work. For these purposes, a reasonable commuting distance shall be within ten (10) minutes of the City.

## § 2-11.  MEDICAL EXAMINATIONS

A person who has been offered employment by the Los Fresnos Police Department may be required to take a medical and physical examination at the City's expense, given by a doctor designated by the City.  The offer of employment will be conditional upon the results of the examination; however, these results will not be used to discriminate on the basis of a qualified disability.  The information obtained regarding a medical condition or history, will be collected and maintained in separate medical files and shall be treated as confidential medical information.  The Chief of Police, acting upon information provide by medical personnel, shall be the final authority in determining medical suitability for employment.

## § 2-12.  EMERGENCY TEMPORARY APPOINTMENTS

The City Administrator is authorized to hire temporary or part-time employees in cases of emergencies or unusual or extraordinary circumstances which impose demands that exceed the manpower capabilities of the City.  Emergency

temporary appointments shall not be used to circumvent the normal appointment procedures. The employees involved shall not acquire any status or rights in the position to which they are temporarily appointed.

## § 2-13.  PROMOTION POLICY

A promotion is the assignment of an employee from one position to another job which is at a higher salary. It shall be the City policy to provide promotional opportunities whenever possible and practical. The selection process may be limited to qualified City employees or such other employees that may be given preference in the application and/or consideration process. Opportunities for promotion across organizational lines shall be maximized, with approval from the City Administrator being necessary prior to such promotion.

## § 2-14.  TEMPORARY PROMOTION

The City Administrator may authorize a temporary promotion to insure the proper performance of City functions if a position is vacant, or its' regular employee is absent. Employees so promoted shall be additionally compensated for the duration of their temporary assignments, in amounts to be determined by the City Administrator. However, temporary promotions shall not be used to circumvent normal selection procedures, and those employees involved shall not acquire any status or rights in the position to which temporarily promoted.

Nothing herein shall be construed to prevent the assignment of additional or a higher level of duties to an employee without additional compensation.

## § 2-15.  TRANSFERS

A transfer is the reassignment of an employee from one position to another, involving no change of pay or salary. A transfer not involving promotion or demotion may be effected at any time for administrative convenience or necessity, or upon request of the employee to the department head, or if interdepartmental, to the City Administrator, provided that the employee is qualified to perform the duties of the position to which a transfer is contemplated. Transfers may be made administratively or in conjunction with an announced selection process. Transfers between classes or between departments shall become effective following approval of the City Council.

## § 2-16.  DEMOTIONS

A demotion is the assignment of an employee from one position to another position which is at a lower salary. A demotion may be effected for disciplinary action. Upon recommendation of the employee's department head, and with the approval of the City Administrator, and if qualified to perform the duties of the lower level position, an employee may be administratively demoted at his/her own request, or as an alternative to layoff. Such demotions shall not be considered as disciplinary actions or to disqualify the employee involved from consideration for later advancement. Demotions when used as an alternative to layoff, may be fully or partially rescinded at any time.

## § 2-17.  REEMPLOYMENT

Former employees who have not been terminated for cause, may be eligible for reemployment, and may be given preference over other job applicants provided they meet the minimum requirements and qualifications of the position, and it is in the best interest of the City.

## § 2-18.  EMPLOYEE ORIENTATION

All new employees shall be given an orientation about the nature of the job, the benefits, obligations, and responsibilities of the position, and the general policies and procedures, of both of the City and the department in which he/she is to be employed. In addition, the City will obtain such information needed for insurance programs, determining citizenship status, etc., that was not provided in the application for employment. The employee shall also

-10-

be furnished with a copy of the City Personnel Policy for their personal use and reference at this time, and the employee, by signature, shall acknowledge its' receipt.

## § 2-19.  REASONABLE ACCOMMODATION FOR DISABILITIES

When an otherwise qualified employee is determined by medical authority to possess a physical or mental limitation, the department head and/or City Administrator will review the case and decide whether reasonable accommodation is available, as required by law.  Applicants with known physical or mental limitations will be provided with reasonable accommodations to City facilities.  Any employee or applicant with known physical or mental limitations who believes reasonable accommodation is not being provided, may submit a written grievance according to the voluntary grievance procedures found in § 7-06 hereof.

## CHAPTER 3

## PROBATION

### § 3-01.  PROBATIONARY PERIOD

Every newly employed person or promoted employee, shall be required to successfully complete a probationary period of six (6) months.  Whenever a license or certification is required for a non-civil service position, the probationary period may be extended for a period of time permitted by state or federal law, to obtain such license or certification.

As prescribed by state law, a person appointed to a beginning position in the Police Department must serve a probationary period of one (1) year, beginning on that person's date of employment.

During or before the end of the probationary period, the supervisor may discharge or discipline any employee, and such disciplinary action or discharge, shall not be subject to any grievance or arbitration.

### § 3-02.  BENEFIT ELIGIBILITY

During the probationary period, a new employee shall be eligible for benefits in accordance with the eligibility requirements stated with each policy describing a benefit.

### § 3-03.  PURPOSE OF PROBATIONARY PERIOD

The department heads shall use the probationary period to closely observe and evaluate, the work and fitness of employees, and to encourage adjustment to their jobs.  Only those employees who meet acceptable standards and minimum job qualifications during their probationary periods, shall be retained.  Department heads shall submit an evaluation report on each probationary employee to the City Administrator prior to the completion of the probation. In the cause of appointing or promoting department heads, the performance during probationary period shall be evaluated by the City Administrator.

### § 3-04.  NO FAULT SEPARATION

During the probationary period, if the department head decides that the new employee is not suited for the job, or that the employee's continued employment may not be in the best interest of the City, the department head shall recommend to the City Administrator an immediate "no fault" separation, which will not reflect negatively in the employee's records.

The City Administrator shall review the employee's performance record, and have the final decision concerning the employee's "no fault" separation.

### § 3-05.  RIGHT OF APPEAL

A new employee who receives a "no fault" separation under the provisions of this policy shall have no right to appeal the separation, except on the grounds of discrimination prohibited by law.