IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAULA REYNOLDS       *
    *Plaintiff*       *
VS.           *    CIVIL ACTION NO.  B-03-056
            *
THE CITY OF LOS FRESNOS, TEXAS,   *    (JURY REQUESTED)
TOM ANDREWS, MANUEL ABREGO,   *
JUAN C. SIERRA, IDA GARCIA,     *
MIGUEL MENDOZA, RAY GARCIA,    *
GONZALO ACEVEDO, AND PAM    *
DENNY INDIVIDUALLY AND IN     *
THEIR OFFICIAL CAPACITIES      *
    *Defendants*      *

---

## Exhibit List

---

| | |
|---|---|
| Ex. A | Reynolds Affidavit |
| Ex. B | Reynolds Deposition |
| Ex. C | Minutes:  Special City Council Meeting Tuesday January 30, 2001 |
| Ex. D | 7/25/2002 Letter From TDHCA to City |
| Ex. E | 3/18/2002 Memo From Denny to Villareal |
| Ex. F | Andrews Deposition |
| Ex. G | Consolidated Administrative Timesheets |
| Ex. H | Abrego Deposition |
| Ex. I | Garcia Deposition |
| Ex. J | State Court:  Reynolds Affidavit |
| Ex. K | 1/17/2001 Memo From Garcia |
| Ex. L | 1/19/2001 Letter To Denny From Girault |
| Ex. M | Sierra Deposition |
| Ex. N | 3/28/2002 Termination Letter |
| Ex. O | 2/7/2002 Letter From abc DISTRIBUTING, INC. |
| Ex. P | Payroll Records |
| Ex. Q | 4/11/2002 Letter From Meyn To Andrews |
| Ex. R | 2/15/2002 Letter From Andrews To Rodriguez |
| Ex. S | Los Fresnos Police Department Witness Statement |
| Ex. T | Los Fresnos Police Department Incident Narrative |
| Ex. U | 1/3/2002 Interoffice Memo From Reynolds To Garcia |
| Ex. V | Acevedo Deposition |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAULA REYNOLDS           *
          *Plaintiff*           *
VS.           *      CIVIL ACTION NO.  B-03-056
          *
THE CITY OF LOS FRESNOS, TEXAS,    *      (JURY REQUESTED)
TOM ANDREWS, MANUEL ABREGO,    *
JUAN C. SIERRA, IDA GARCIA,       *
MIGUEL MENDOZA, RAY GARCIA,     *
GONZALO ACEVEDO, AND PAM      *
DENNY INDIVIDUALLY AND IN       *
THEIR OFFICIAL CAPACITIES        *
          *Defendants*       *

## AFFIDAVIT OF PAULA REYNOLDS IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Before me, the undersigned notary, on this day, personally appeared Paula Reynolds, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

    1.     My name is Paula Reynolds; I am the Plaintiff in the above referenced lawsuit. I am

over the age of 18 and have never been convicted of a felony. I am capable of

making this affidavit. The facts stated in this affidavit are within my personal

knowledge and are true and correct.

    2.     In approximately December 2000, I reported to Interim Chief of Police Adrian

Cabrera that City Secretary Pam Denny improperly charged a radar detector to her

City of Los Fresnos credit card. Mr. Cabrera and I do not have a personal or social

relationship, and I was speaking to him in his capacity as Interim Chief of Police.

During that same month, I also reported Ms. Denny's improper use of the City's

*AFFIDAVIT OF PAULA REYNOLDS*                                            1
*IN SUPPORT OF PLAINTIFF'S RESPONSE*
*TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION*
*FOR SUMMARY JUDGMENT*



EXHIBIT

A

credit card to then-Mayor Manuel Abrego, Finance Director Ruth Hernandez and Councilwoman Ida Garcia-Cortez.

3. I believed then as I believe now that Pam Denny's conduct was a violation of the law.

4. I am a high school graduate. I am not a law enforcement officer.

5. Following my report of Denny's violation of law, I was subjected to a pattern of discrimination and ultimately terminated from the City.

6. I was terminated from my position with the City of Los Fresnos in February 2002 by Ida Garcia-Cortez. When I asked Ms. Garcia-Cortez why I was being terminated, she told me there was no reason. She stated that I was an at-will employee and that the City did not need a reason to terminate my employment. I was never told that I was being terminated for performance-related reasons.

7. In January 2001, I was called into an executive session of the Los Fresnos' City Council meeting. That was improper because I had not been placed on the agenda. I was told in no uncertain terms that the City was (1) in trouble with the HOMES Program and (2) the City needed to produce timesheets for work done on the project. I told the City Council that there were no timesheets other than mine. Tom Andrews, the City Attorney, and the council told me to "find" them, despite the fact that I told them the records did not exist. As I was leaving the executive session,

*AFFIDAVIT OF PAULA REYNOLDS*
*IN SUPPORT OF PLAINTIFF'S RESPONSE*
*TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION*
*FOR SUMMARY JUDGMENT*

Alderman Gonzalo Acevedo blocked my exit from the room and told me in a low voice: "We need you to find those documents." I had just told him and the rest of the City Council that the documents did not exist. It was clear to me that City Council wanted me to falsify timesheets.

8.     On February 7, 2002, Tom Andrews came to my office and asked about my progress "re-creating" the timesheets. I again explained that the timesheets had not been kept. Within hours of informing Andrews that I was unable to provide any timesheets other than my own, Andrews and Garcia came to my office and terminated me.

9.     While I was employed with the City, it was never brought to my attention that there were issues concerning my competence.

10.     I was never told I could not open a catalog account. The other City employees did it, and I assumed it was approved. I have never received a bill from the City or the catalog company.

11.     I was suspended from work for one day without pay for an altercation I had with a co-worker. She had been making comments and verbally abusing me for many months. I broke down and called her a bitch. I took my one day suspension without pay. After the suspension without pay, I deducted eight hours from my time sheet before submitting it to Paysmart, the City's payroll company. However, I needed the money because my husband was not getting paid. I requested and received

*AFFIDAVIT OF PAULA REYNOLDS*
*IN SUPPORT OF PLAINTIFF'S RESPONSE*                                                                3
*TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION*
*FOR SUMMARY JUDGMENT*

permission from Garcia-Cortez to inform the payroll company to pay me for a full eighty-hour work week with the understanding that I would deduct the eight hours from the following pay period.

12.   The next payroll period, I docked myself eight hours and clearly marked the timesheet. The payroll company paid me for a full eighty hours despite my marking on the timesheet that payment should have been for seventy two hours. The payroll company made an error.

13.   I contacted Paysmart one time and only one time to change my pay amount. I did so with permission. I did not contact Paysmart a second time to have my pay adjusted for a second time.

14.   Tom Andrews told Mr. Cavazos to find information on me regarding theft. Tom Andrews told people I was fired for being a thief.

15.   In the Spring of 2002, Shawn Renee Davis, a hairdresser in Los Fresnos, told me that Tom Andrews had told her I was terminated for stealing money from the City.

*AFFIDAVIT OF PAULA REYNOLDS*                                                     4
*IN SUPPORT OF PLAINTIFF'S RESPONSE*
*TO DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION*
*FOR SUMMARY JUDGMENT*

16.    This whole situation – everything from the work environment at the City, the pressure to falsify HOMES Program timesheets, and my termination – has caused me severe emotional distress. I have had problems sleeping. I have been depressed. I have been angry about the way I was treated. I am nervous.

FURTHER AFFIANT SAYETH NOT:

Dated: 2-18-05                              _Paula Reynolds_
                                            Paula Reynolds

STATE OF TEXAS          )
                        ) SS.
COUNTY OF CAMERON       )

    Subscribed and sworn to before me, the undersigned Notary Public, this _18_ day of February, 2005.



_R+ Vill_
Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAULA REYNOLDS            )
      PLAINTIFF          )
                 )
                 )  CIVIL ACTION NO: B-03-056
                 )
                 )   (JURY REQUESTED)
THE CITY OF LOS FRESNOS,   )
TEXAS, TOM ANDREWS, MANUEL )
ABREGO, JUAN C. SIERRA,    )
IDA GARCIA, MIGUEL MENDOZA, )
RAY GARCIA, GONZALO ACEVEDO,)
AND PAM DENNY INDIVIDUALLY )
AND IN THEIR OFFICIAL      )
CAPACITIES                 )
      DEFENDANTS         )

**ORIGINAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF

PAULA REYNOLDS

OCTOBER 20, 2004

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    ORAL DEPOSITION of **PAULA REYNOLDS**, produced as a

witness at the instance of the Defendants, and duly

sworn, was taken in the above-styled and numbered cause

on the 20th day of October, 2004, from 2:00 p.m. to

3:50 p.m., before SUSAN POCKRUS, CSR in and for the State

of Texas, reported by oral stenography, at the offices of

Rodriguez & Nicolas, L.L.P., 319 East Elizabeth,

**EXHIBIT**

B

Brownsville, Texas 78520, pursuant to the Federal Rules

of Civil Procedure and the provisions stated on the

record or attached hereto.


-o0o-

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Ms. Teri Danish
    RODRIGUEZ, COLVIN & CHANEY, L.L.P.
    1201 East Van Buren
    Brownsville, Texas  78520

    -AND-

    Mr. Henri E. Nicolas, Jr.
    Mr. J. Andrew Casey
    RODRIGUEZ & NICOLAS, L.L.P.
    310 East Elizabeth
    Brownsville, Texas  78520


FOR THE DEFENDANTS:
    Ms. Eileen M. Leeds
    Ms. Analisa Figueroa
    WILLETTE & GUERRA, L.L.P.
    1534 East 6th Street, Suite 200
    Brownsville, Texas  78520


ALSO PRESENT:
    Ms. Susan Pockrus, CSR
    Mr. Richard Wharburton (City Counsel)

1          MS. LEEDS:  Right.

2     Q.  (BY MS. LEEDS)  I just want your understanding.

3     A.  The Whistle Blower Act to me is an employee who

4  finds another employee doing something that is wrong

5  within the company, be it illegal, and they report it to

6  the proper authorities.

7     Q.  And you believe that you found another employee

8  doing something wrong within the City, because that's the

9  company you're referring to here --

10    A.  Correct.

11    Q.  -- and you reported it?

12    A.  Yes.

13    Q.  Okay.  Who was or are the employees who you

14  found doing something wrong?

15    A.  Pam Denny, the City secretary.

16    Q.  Are there any other employees who you found

17  doing something wrong?

18    A.  Not that I recall.

19    Q.  Okay.  And you believe that she engaged in

20  some activity that was wrong for the City, within the

21  City --

22    A.  Correct.

23    Q.  -- and you reported it?

24    A.  Correct.

25    Q.  Who did you report it to?

1      A.   I reported it to Adrian Cabrera.

2      Q.   And just for the record, he was the --

3      A.   Interim City police chief.

4      Q.   Police chief, okay.

5      A.   To the then mayor, Manuel Abrego; to Ida Garcia.

6 She was a council member; to Ruth Hernandez who was the

7 finance director at the time; and I believe I also

8 brought it up to Yolanda Perez and Sarah Garcia.

9      Q.   Who was Yolanda?

10      A.   She was one of the girls who sat up at the

11 front.   They took the water payments and things like

12 that.

13      Q.   Okay.   Clerk --

14      A.   Clerk.

15      Q.   -- in the City?

16      A.   Uh-huh.

17      Q.   And I'm sorry, who was the last person you said?

18      A.   Sarah --

19      Q.   Sarah Garcia?

20      A.   I think that's her name.

21      Q.   Who was she?

22      A.   Also a clerk.

23      Q.   Of this list who was first?

24      A.   The actual first person was Adrian Cabrera.

25      Q.   All right.   Who followed him?

1    A.   Manuel Abrego and Ida Garcia.

2    Q.   Were they together or --

3    A.   No separately.

4    Q.   -- one after the other?

5    A.   One after the other.

6    Q.   Okay.  So Adrian first, Manuel second,

7 Ida third, Ruth?

8    A.   She was fourth.

9    Q.   All right.  Did you -- okay.  What about

10 Yolanda?

11    A.   Let me switch -- may I switch that?

12    Q.   Sure.

13    A.   Let me put Ruth third and Ida fourth.

14    Q.   Okay, Ruth third and Ida fourth.

15    A.   Uh-huh.

16    Q.   Okay.  What about Yolanda and Sarah?

17    A.   Fifth and sixth.

18    Q.   In that order?

19    A.   Yes.

20    Q.   Okay.  Do you recall when you -- well, let me

21 ask you, what was the wrongdoing that you found?

22    A.   I had received a Visa bill that was the City's

23 Visa card and there was a charge on there that I could

24 not -- could not identify.

25    Q.   And what was wrong about that?

1    A.    It was to -- I don't remember the name of the

2    company off the top of my head.  And I went -- I called

3    the company and -- to find out who they were and what the

4    purchase was for.  If I remember correctly, it only said

5    they were X-company and it was a 400-and-something-dollar

6    purchase.  And so I called the company to find out who

7    they were and what the purchase was.

8    Q.    Okay.  And so you found out that somebody had

9    purchased something.  What led you to believe that that

10   was a wrongdoing?

11   A.    I was on the phone with the people at the

12   company and they told me that a radar detector had been

13   purchased, and I asked them who purchased the radar

14   detector -- because we, of course, had a police

15   department -- and they said it was a Pam Denny.

16   Q.    Okay.  And what led you to believe that that was

17   wrong?

18   A.    I then went into Pam Denny's office and she was

19   typing at the typewriter.  And I said -- I told her what

20   I had found out that they said it was a radar detector

21   that had been purchased by a Pam Denny.  Adrian Cabrera

22   was sitting there and I asked him, Did you buy a new

23   radar detector for the City?  And he said, No, we haven't

24   purchased any.  And Pam took the piece of paper from me

25   and said it was a mistake.

1    that conversation in the kitchen?

2        A.    I don't recall.

3        Q.    When did you report it to the mayor?

4        A.    That day.

5        Q.    And do you recall your words to the mayor?

6        A.    No, I do not recall my words.  They were

7    something to the effect that I had received the Visa bill

8    and on it was a strange purchase, as I did with any

9    purchase that I wasn't familiar with.  When they purchase

10   something they're supposed to turn in the receipt, and I

11   had no receipts to go with this purchase.  And so I had

12   called the company and I explained to them what happened,

13   and they told me that a Pam Denny had made the purchase

14   via the internet.

15       Q.    Okay.

16       A.    And I believe they also said it was in the

17   evening time.

18       Q.    Okay.

19       A.    Late in the evening.

20       Q.    What was your position at the time?

21       A.    I was -- I had so many different job duties,

22   I don't remember.

23       Q.    Okay.

24       A.    I believe I was accounts payable.  I was helping

25   Ruth Hernandez with accounts payable.

1        Q.   Okay.  Tell me about that.

2        A.   It was during a -- I was working late one night

3   with -- I don't remember the exact individuals, but I

4   believe it was Candy Medina and Rosie Perez.  And

5   Candy had asked that I work late and we were working on

6   accounts payable or whatever because Candy was now the

7   finance director and had taken over a whole lot of

8   things.  And the City Council was in session, they went

9   downstairs to go into Executive Session.  I believe they

10  called Pam in first into Executive Session and then I was

11  the next -- then Pam came out and told me, she said,

12  Paula, they're going to call you in in just a minute,

13  and I said, Oh, okay.  And sure enough, they did and I

14  went into the Executive Session.

15       Q.   Okay.

16       A.   During this meeting it was about the Home

17  Program.  This was when the City found out they were in

18  a lot of trouble.  And they asked me if I knew about some

19  certain documents, and I said I knew of some of the

20  certain documents.  And it was expressed to me to find

21  these documents, and I said that I could if they would

22  bring me the file boxes over from the warehouse over

23  there at the water plant.  And I was then told to find

24  these documents.

25       Q.   You were then told to find the documents?

1    A.    Uh-huh.  And I said that -- they were time

2  sheets, and they were wanting time sheets on anybody that

3  had worked on the Home Program.  And I told them, I'm the

4  only one that has a time sheet.  And they wanted -- they

5  asked if Pam Denny or Paul Chavez or anybody that had

6  worked on the program had time sheets.  I said, No, I'm

7  the only one.

8         And they told me -- as I got up to leave, one of

9  the council members looked me in the face and said, You

10  need to find these documents, and I said, Okay.  He said,

11  No, we need you to find these documents.

12    Q.    Who told you to falsify the document?

13    A.    At that time, Gonzalo Acevedo.

14    Q.    What did he say to you?

15    A.    We need you to find these documents.

16    Q.    And you interpreted that as being, Falsify these

17  documents?

18    A.    Yes.

19    Q.    His words to you were, You need to find these,

20  but you understood that to mean, You need to falsify

21  these --

22    A.    I had already told them they were not to even be

23  found, you couldn't find them.

24    Q.    Okay.  My question was, he told you, Find these

25  documents, and you understood that to mean, Falsify these

1    sort of finishing up on your whistle blower claim.  And

2    just so, we'll start there.  Is there anything else you

3    can think of that is part of your whistle blower claim

4    that you have not mentioned so far?

5         A.    Not that I can think of right now.

6         Q.    Okay.  You also have a claim for defamation?

7         A.    Yes.

8         Q.    Right?

9         A.    Yes.

10        Q.    And you understand that to be slander?

11        A.    Right.

12        Q.    Right?  What is your understanding of what that

13   claim entails?

14               MS. DANISH:  Objection; form.

15        A.    What do I understand slander?

16        Q.    (BY MS. LEEDS)  Yes.

17        A.    The slander claim?

18        Q.    Well, let me just put it this way:  There's

19   slander and there's libel.  Libel is when it's written.

20        A.    Oh, okay.

21        Q.    Okay.  And slander is when somebody said

22   something.

23        A.    Okay.

24        Q.    So what do you understand was said?

25        A.    I understand that it was said to Johnny Cavazos

```
 1   by Tom Andrews that they needed to find something on me.

 2   And he went to Johnny Cavazos, and as I understood what

 3   was being said that Tom said, We need to find something

 4   on Paula.  And Johnny said, No, and asked Tom to leave

 5   the office -- to leave his office.  He's at Johnny's

 6   office.

 7        Q.   Okay.  How did you learn of this conversation?

 8        A.   I was told about this conversation some time

 9   later by Johnny Cavazos.

10        Q.   Was he still employed with the City when he told

11   you?

12        A.   Yes.

13        Q.   Do you know what state of status -- whoops --

14   where his position was with the City at the time he told

15   you?

16        A.   He was not in the best of terms.  Though it --

17   it wasn't at rocky as it was towards the end.

18        Q.   Okay.  Did he already know at that point that he

19   thought they were going to try to terminate him?

20             MS. DANISH:  Objection; form.

21        A.   No.

22        Q.   (BY MS. LEEDS)  Or, I mean, did he express

23   anything like that to you or did you know from other

24   sources that he was in that situation?

25        A.   I don't recall.
```

Certified to by me this the 10th day of November, 2004.


_Susan Pockrus_

SUSAN POCKRUS

CERTIFIED SHORTHAND REPORTER
STATE OF TEXAS
CERT. NO.: 5862    EXP. DATE: 12/31/05

POCKRUS REPORTING SERVICE    FIRM NO. 419
P.O. BOX 531786
HARLINGEN, TEXAS    78553
1-800-423-7713
1-800-423-7730

2064

## SPECIAL CITY COUNCIL MEETING
## TUESDAY, JANUARY 30, 200!

The Los Fresnos City Council convened in a Special Meeting on Tuesday, January 30, 2001 at 7:30 p.m. at the Community Center, 204 N. Brazil Street.  Present were Mayor Manuel Abrego, Mayor Pro-tem Melanie McCormick, Alderman Gonzalo Acevedo, Juan Carlos Sierra, Miguel Mendoza and Ida Garcia, Interim City Administrator Paul Chavez and City Secretary Pam Denny.

Mayor Abrego called the meeting to order at 7:30 p.m.

Roberto Cepeda gave the invocation and then led the audience in the Pledge of Allegiance.

<u>Visitor remarks</u>

Ms. Caslow asks about the one way alley behind Judge Romero's office.  She stated that one day she was getting ready to turn down the alley and a Constable's car came barreling down the alley the wrong way, no lights or sirens were on, and he almost hit her.  Mayor Abrego stated that Ramiro Sanchez was the newly appointed Constable and he was present tonight and she should talk to him after the meeting.

David Longoria explained his involvement with the Valley and stated that he about two years ago he had come before the Council on an insurance bid for employee's health insurance.  He had come to City Hall and got an application form and filled it out and at the Council meeting he spoke about the Atena policy.  He worked with Pam Denny during this period and another insurance company and his company were the low bids.  At that time I was very impressed with the way Ms. Denny handled the situation, for the best of Los Fresnos employees.  She pointed out that the policy the City had at the time was the best for the employees.  At that point, being a retired IRS employee, and realizing that ethics and honesty of Ms. Denny, one who is always tiring to help the City?  Again, I was very very impressed with the way she handling it, she was looking out for the City and the employees.  I travel throughout the Valley and quite involved with particular issues and I felt like I needed to come tell the Council that you are going to be making a big mistake if you decide to get rid of Ms. Denny.  There are very few people that are willing to give their uproots and Ms. Denny has done this for 22 years and I ask you to weight all things and do the best thing for this City.

Lela Burnell stated that she has grown up in this community and she was involved in several things as a child and Ms. Denny was always making time to be part of the community.  She has always worked very hard and made sure her family is contributing to the community.  Ms. Denny taught a group of kids how to vote, what the process was



Request for
Production No. 14

**EXHIBIT**
C

2065

and why it is important to vote. Ms. Burnell stated that she went to school with some of the council members and she has fond memories but she knows that everything Ms. Denny does is for the best of the community. Everyone will be watching you, the council, to make sure you are doing what is best for the community.

Terry Vinson and I just want to quickly clarify something that was written in the newspaper. I am not going to clarify everything because there is too much that is misleading that was written by one of the Alderman, Ida Garcia. It clearly states in the article that I and Pam Denny conspired to write up a Chief of Police job description. To begin with in 1999 I was brought in as Interim Chief and the first week there was a scare of a hurricane. Then I was ask by Pam Denny and other people to review the job descriptions of all the officers, the policy on procedures. The Policy of Procedures is about 15 years old and is violation of civil rights and the job descriptions were very old. I did make my recommendations and at that time I was not seeking permanent employment with the City, I was looking out for the best of the City. In this article I was accused of conspiring and being very dishonorable and treating people unfairly, that was not the case. I simply was looking for the best people for the job.

George Gomez and he is a local businessman and I know that some of the council knows me and he works with Alderman Acevedo. I have known Ms. Denny since 1981 when we first started our business here in Los Fresnos. She is very knowledgeabie and has always helped us in the right direction. I agree with some of the comments made tonight that it would be a big mistake to let Ms. Denny go. This is one of the first council meetings that I have attended in a long time and I would like to come to more meetings and hear what the council is doing for the community. Please consider Ms. Denny for continued employment she is a very valuable assest to our community.

Robert Cepeda I come tonight to speak on behalf of Ms. Denny. I have not spoken with her but I come on her behalf. Some of you have served on the council when I was Mayor and I think you know how hard she works, how is has gone above and beyond. Did I always agree with her, no, but I knew in my heart she was doing it for the best of our community. Tonight as you consider whatever it may be before you, which I hope we will be able to find out, I would ask that you leave any personal feelings aside. I know that personal issues are probably the most difficult part of the job that you do as our Aldermen. I also ask that you consider someone that has given above and beyond for her community. She has had the opportunity to work other places for more money but she has chosen to stay. I think that any differences that you may have can certainly be worked out. If guidelines need to be set up then may it be so but I think a termination of Ms. Denny will be a terrible mistake for our City and for the future of what can be for Los Fresnos. Again, please consider the 22 years of her untiring service.

Request for
Production No. 14

2066

<u>**Closed Session-The Board of Aldermen may recess to a closed session pursuant to Texas Government code 551.074 to deliberate the employment, evaluation, reassignment, duties, discipline or dismissal of the City Secretary, City Treasurer, Tax Assessor and Tax Collector**</u>

Pam Denny stated that she request that this be in open session and not in closed session.

Mayor Abrego turned the meeting over to City Attorney David Girault.

Mr. Girault stated that under the Texas Local Government Code a Municipal Officer includes the office of City Secretary, City Treasurer and Tax Assessor/Collector. They can not be removed from office for cause except upon a notice of charges against that person and a chance to be heard. Following the last council meeting various members of the Board of Aldermen provided to our law firm a list of concerns and those were provided to Ms. Denny per telecopier and certified mail on Friday, January 19, 2001. The purpose of this meeting tonight under Local Government Code is to allow her to response to the charges. Mr. Girault read the list of charges.

1.    Her authorized use of the city credit card for the purchase of one or more personal items. In my opinion, was a highly irresponsible, inexcusable, criminal action, which constitutes theft and misappropriation of entrusted public funds. Ms. Denny charged $405.00 to the City of Los Fresnos Visa card on November 13, 22000 while shopping on the Internet from her residence. She did not reimburse the City of Los Fresnos until December 7, 2000 after it was brought to her attention.

2.    Her unauthorized use of the City's Sam's Membership card for personal use and benefit to her family members. Mrs. Denny has placed her immediate family members (Kenneth, Melissa and Douglas) on the City of Los Fresnos account. I believe this is a personal gain on her part and is immoral. The City of Los Fresnos was neither aware of this fact, nor was it authorized.

3.    It has come to my attention that Mrs. Denny has on several occasions has taken personal and/or sick leave from work, but has failed to make any notation of it. This important and fair procedure is to be done so as to be docked or balanced out for that time. On those occasions she claims all 40 hours as regular time worked, therefore, allowing for the build-up of her sick leave time to be paid at a later date. In my opinion, this inexcusable action is again an example of theft in the form of time and pay using public funds.


Request for Production No. 14

2067

4.     As the head of her department, Mrs. Denny is charged with, and is responsible for the daily support of her subordinate staff. She is also charged with maintaining and enhancing the moral of her subordinate staff, in part by setting the tone and example for the office work environment. It is blatantly evident that Mrs. Denny has failed miserably in these crucial responsibilities. These failures are a direct reflection of the poor management style that Mrs. Denny implements.

5.     At the September 26th city council meeting Mrs. Pam Denny took it upon herself to alienate and discriminate against several Hispanic people. Mrs. Denny stated to them as they were arriving, that they could not sit at the first two rows of chairs closest to the council table due to them being "reserved". Just before the start of the meeting it was noticed that Anglo-Americans with close ties to Mrs. Denny, were sitting in the "reserved" seating area. It is not the policy of this city to allow for the reserving of seats for anyone other than handicapped people that give proper advanced notice. This action that was taken is a pending lawsuit for the city.

6.     Blue Cross/Blue Shield Insurance: Health insurance for all City of Los Fresnos employees was briefly cancelled due to Mrs. Denny's actions.

7.     The misinformation to the City Council and employees of the City of Los Fresnos: Mrs. Denny advised the City Council of Los Fresnos to place two 2) employees to part-time status because of budget considerations. Mrs. Denny informed the City Council that the employees would continue to receive medical/health insurance when, in truth, it is against Blue Cross/Blue Shield policy to insure part-time employees.

Mr. Girault stated that there was supporting documentation relating to Mrs. Denny. Additional concerns raised by another Alderman and they are as follows:

1.     I discovered that Pam Denny had personally purchased some items at Sam's and received reimbursement from the City. When asked about these items, she lied and said they had possibly been given to the prisoner's. Why did she mislead us?

2.     She released confidential attorney-client papers to a citizen. She was irresponsible in her actions and fails to attend to situations in a timely manner.

3.     I can't trust any city business to be completed in a reasonable amount of time. We approved the purchase of three new police cars in October 2000. In January, they still had not been purchased. Tracy Larimore came in one day and got us bids for 3 new cars and within three days they were ordered.

Request for
Production No. 14

2068

4.   Does not work hand-in-hand with others from other departments. In a meeting with the Police Dept. staff she made a comment that whoever the new Chief would be, he would not get anything from her.

5.   The communication between Mrs. Denny and the council exists to bare minimum, if any at all. Example: Council members were invited (by fax to City Hall) to a dinner at the Wells Fargo Bank. Four of the council members never received word of this until a week later.

6.   Mrs. Denny can be very rude at council meetings. At one particular meeting, she expressed out loud that the Council had made a stupid mistake. This was the meeting where we appointed Father Charlie to the CDC board.

Mr. Girault stated that Mayor that is all the grievances provided by the Board of Aldermen. Mr. Girault stated that he would point out to the Board of Aldermen that if there are any other concerns those were not passed along and Mrs. Denny had not been given notice of those so they can not be addressed. Mrs. Denny now has the opportunity to response to these charges as have been read.

Mrs. Denny stated that she would like to read a statement then she would answered concerns.

I can tell you with a clear conscience that by and large the allegations in the attorney's letter, which I received just last week, are untrue. In fact, many of those allegations were completely unknown to me and involve situations in which I was not involved or was not the decision-maker. However, I believe that it would be counter-productive and would serve no purpose to start a swearing match by taking up everyone's time responding to allegations, which have no factual basis. I believe that the citizens of this town, and the members of our government, are better served by working towards unity and towards moving our town in a positive direction, rather than engaging in an unnecessary controversy.

In an effort to move forward towards unifying our city and putting this issue behind us all, I feel it is appropriate, and in fact that it is my duty to the mayor, the aldermen, and the citizens, for me to respond to the one issue that I have been informed is the primary reason for this meeting. I have been informed that the main purpose for the evaluation of my continued employment with this city is because of my accidentally using the city credit card for a personal purchase, in fact, one alderman has even indicated that the alleged action was criminal. I did in fact accidentally make a personal purchase with the city credit card in the amount of $405.00; however, the purchase was an innocent mistake, not a criminal act.

Request for
Production No. 14

2069

In November, when I was preparing to go to Election School, I took the city credit card, knowing that I would need it for the expenses of that school. By coincidence, the city credit card was issued by the same bank as a personal credit card of mine, and the two looked very much alike. Shortly thereafter, I was shopping from home for a Christmas gift for my daughter, and I accidentally took the wrong card, the city card, out of my purse to make the purchase. At the time, I had no idea of the mistake.

When the bill for the city credit card came in, Paula Reynolds approached me and asked if I knew what the $405 purchase on the bill was for, not recognizing the purchase, I instructed Paula to call and find out what it was. She returned and told me it was a charge that had been made by me. I was shocked and embarrassed, as I had no idea I had accidentally used the card. I immediately wrote a check to the city for the full amount, before the bill was due and before the city paid the bill. Thus, NO city money was expended as a result of my mistake, even though one of the Aldermen has accused me of theft and misappropriation of city funds.

I realize that I should have been more careful with the city credit card. I am embarrassed that this happened, and I take full responsibility for not being as careful as I should have been with city property. However, I love serving the city, and I love working for the people of Los Fresnos, and I simply do not understand how such an honest mistake, which caused no harm to the city, is reason to consider firing me and leaving me unemployed.

If the aldermen believe that it is appropriate to reprimand me for accidentally using the credit card, I understand and will accept that reprimand with my head held high. I accept the fact that I should have been more careful, and I will not deny my mistake. I am truly sorry. I only hope that you will be just, and will realize that my desire is to serve the citizens of Los Fresnos as I always have. For over 20 years, I have served Los Fresnos with pride, and I have always attempted to fulfill my responsibilities with the utmost of professionalism, dignity, and honesty. I would like to continue doing that for years to come, this is my home, and these are my people. Please let me continue to work for them, and for you.

If there is any question to my loyalty to the City and my desire to do this job, I will answer that question by letting you know even tonight as the Board considers my termination I have taken the minutes of this meeting because it is my job and my responsibility. Thank you.

Mr. Girault stated that under the City's personnel policy that there are several alternatives and they are outlined in a letter that was addressed to Mr. Chavez earlier today. I will point out that under the Personnel Policy disciplinary actions include verbal warning,

Request for
Production No. 14

2070

written reprimands, suspension with or without pay or reduction in pay, demotion and or dismissal and additionally the Personnel Policy provides that an employee "may be formally warned anytime he or she may be dismissed or otherwise disciplined, for further unsatisfactory performance and/or conduct. I take this to mean that an employee may be placed on disciplinary probation.

Mr. Girault stated that the employee has requested that this hearing be in open session the council cannot go into closed session to discuss this, all discussion must be done in open session.

Mayor Abrego asks if any council members have any questions.

Mayor Pro-tem McCormick stated that the only comment she would like to make is those that had the concerns/questions have they been answered or do they need to be clarified. I did not have these items in front of me until right before the meeting. Mayor Abrego stated that everyone got them tonight. There are certain people that had these questions and I am inquiring has Ms. Denny answered the questions or do they need more information.

Alderman Mendoza stated he did have some questions. He asks Ms. Denny to clarify on the Sam's membership. Ms. Denny replied that her son Douglas has not been on the membership for three years and my husband and daughter are on there but have been cancelled. I pay for their membership so the City is not out any money. Ida ask about the chips and pretzels at a meeting and I replied I guess they are for the prisoners but I would have to check the next day which I did and Ms. Hampton informed me that they had been bought for the court personnel and they are still up in the shelf in her office. My family was put on the membership in 1991 when Mr. Brooks was still here. There were other city employees that had their family members on it also but mine are the only ones left on it now. Mr. Mendoza asks if the council had authorized it and Ms. Denny stated that it was back then.

Ms. Denny stated that on the Wells Fargo dinner, she had nothing to do with it. I did not get the invitation, I found out about it at the very last minute and it was another city employee that told me about it. It was Mr. Chavez that was in charge of that not myself.

Mr. Mendoza asks about the morale of the subordinates. Ms. Denny stated that there is a problem with two people in that office and those two people are the ones that made the complaints to the council. Everyone else in the office has been fine. I did received a very nice card signed by all EMS personnel telling me how much they appreciate that I have done for them.

Request for
Production No. 14

2071

Ms. Denny stated that on the sick leave, she comes in early and does not take a lunch hour when she goes to a Doctors appointment. I have never ever would cheat the city out of time. I have put in hundreds of hours of overtime and would never charge the City for it.

Mr. Mendoza asks about the health insurance. Ms. Denny stated that the Blue Cross/Blue Shield insurance was never cancelled. Ms. Denny had documentation that shows the Mayor signed the letter and another letter dated January 19 that did cancel the insurance because the new insurance had taken effect on the 15th of January. If anyone wants to call Mrs. Greer with Greer Insurance they are more than welcome to do so. Mayor Abrego stated he thinks what happened is a bill that was not received by City, June payment, and it was not paid. The reason the Mayor got involved was some of the employees were not getting their claims paid and it was October 6th before it was paid. Ms. Denny stated that she did not pay the bills that was Ms. Hernandez and she should have taken care of it. Alderman Acevedo ask why were we making Ms. Denny responsible if the City did not receive a bill, it is not her fault.

Mayor Pro-tem McCormick stated that she needs to make a statement on the one item she has knowledge on and that is the Wells Fargo dinner. She stated that she was called by Mr. Chavez and I forgot about it. The Mayor called and asks where I was and I told him I forgot. The Mayor informed me that I was the only one called but Pam Denny was not responsible for that it was Mr. Chavez and the Mayor.

Ms. Denny stated that the two employees that have a problem with her. she is willing to sit down and talk out our differences. A lot of it has to do when she was in charge and they did not like what she was telling them about getting their job done.

Ms. Denny stated that about the discrimination, she has an affidavit from another employee stating it was their idea. Ms. Denny stated she did ask the people to move back two rows so that the Chief's family would be able to sit my him. The city employee came up to me and ask me reserve the seats and I did not see anything wrong with it, I would have done it for any employee that was having a hearing, if asked.

Ms. Denny stated that her father was Mayor of this City for many years and her brother was also an Alderman and Mayor. All she has ever wanted to do is serve the people of Los Fresnos.

Ms. Sutton told the council that in one of the concerns was that Pam Denny stated that the council was stupid or whatever and Ms. Sutton said that it was her that had said it not Ms. Denny. Ms. Denny stated it was not on the tape of the meeting because she had gone back and listened to the tape.

Mayor Abrego stated that he would entertain a motion.

Request for
Production No. 14

2072

Alderman Ida Garcia stated that because of the actions that were listed I feel that we can not completely close our eyes to this. What I would like to do, and I am making a motion here, is to reassign Pam Denny to a clerk and take away City Secretary, City Treasurer, and Tax Assessor/Collector all municipal offices, at a pay of $27,000. Ida Garcia ask if she needs to clarify water and sewer clerk and the Mayor stated no. Ms. Denny stated that means you are going to give me a $9,000 cut in pay and Ms. Garcia stated yes. Mayor Abrego asks if there was a second to the motion. Juan C. Sierra seconded the motion. Mayor asks for discussion.

Mayor Pro-tem McCormick asks what her job responsibilities would be and what would be her job description, what department, who will she report to. She is supposed to go to work at 8:00 in the morning and she needs to know who to report too. You had the whole City reporting to her and now you are putting her as a clerk. Mayor Abrego ask Ms. Garcia didn't you state water and sewer and Ms. Garcia replied yes. Ms. McCormick ask if they had looked at the budget to see where the money is going to come from, you are going to have to appoint three people to take her place and where is the money going to come from. This is not in the budget. Ms. Garcia stated water and sewer and her duties would be whatever they do in water and sewer. Ms. McCormick asks who would be her supervisor and Ms. Garcia stated the City Secretary and Ms. McCormick stated we do not know who that is yet.

Alderman Acevedo stated he does not quite understand what Ms. Denny will be doing and Ms. McCormick stated that Ida suggested that to demote her to a clerk for water and sewer. Mr. Acevedo ask if she would be at the same salary and Ms. McCormick stated that Ida had reduced her pay to $27,000. Mr. Acevedo ask Ms. Denny how much she was making now and Ms. Denny replied $36,000.

Mr. Shipley stated that the council is putting Ms. Denny in a very unique situation. If you reduce her to a clerk and I have been down this road myself. Would she be held responsible for not answering any questions from her higher ups that come to her for help, after all she has been reduced. Would she have to take her 20 years of knowledge and give it to somebody that has only worked for the City least than 5 years? I think you better consider that because when I was demoted and they came to me and I told them to go fly a kite.

Another question asks was doesn't someone already do that job right now and what are you going to do with that person, fire them. Ms. Garcia stated that Pam has duties in water and sewer right now. Ms. Denny stated that all she does for water and sewer is some of the deposits and balancing the bank statements. Ms. McCormick stated that is this not Yolanda and Sara's jobs and are we going to switch everyone around in city hall. Ms. Garcia stated do we want to leave Ms. Denny with a job or not. This is the only option, Ms. Denny did wrong. The answers Ms. Denny gave did not satisfy Ms. Garcia

Request for
Production No. 14

2073

because, Ms. Garcia, she had the credit card and it says business account, City of Los Fresnos Pam Denny. Ms. Denny explained again that she did not realize it was the City's whether she believes me or not.

Ms. McCormick stated yes there was a mistake made and yes Ms. Denny need to be reprimanded and we need to have better control over the credit card but do I think it was intentional, no I do not. Once it was brought to her attention, we have a copy of her check that was dated that same day, and the City was not out any money.

A question was ask from the audience that Ms. Garcia stated that the only options was demotion or dismissal and the City Attorney had stated several other options. Ms. Garcia stated that demotion or dismissal is the only alternative, she had not heard anything else.

Ms. McCormick stated that there could be suspension without pay for three days or a written reprimand. Does Ms. Denny have any written reprimands in her file and the Mayor stated no. For 22 years she has served this community with no reprimands so wouldn't it behoove us to give her a written reprimand for using the city credit card and if you feel it is necessary look at giving her suspension without pay to let her know this will not be tolerated and she need to be more careful.

Juan C. Sierra stated that the fact of this credit card situation she be suspended without pay and pass this on to the District Attorney for investigation. Ms. McCormick stated that she did not think that there was enough to send to the D.A. Ms. Denny has stood before us and admitted to the mistake, the City of Los Fresnos did not pay the bill, the city employees did their job by checking all the charges. Ms. Denny was the Interim City Administrator at the time and she instructed her staff to call and find out what the charge was for and who made the charge. When it was brought back to her and told she had made the charge she immediately wrote a check to the City, so I do not see that there is anything to investigate. Mayor Abrego stated he did not agree with Mr. Sierra, I do not think we need to go that route.

Alderman Mendoza stated that Ms. Denny had answered his questions and he feel that all that needs to be done is a period of probation to evaluate and see how she is doing and of course suspension without pay. Again, like Ms. McCormick states let Ms. Denny know that we are not going to tolerate this happening again. Alderman Acevedo said he seconded his statement.

Mayor Abrego stated that there is still a motion on the floor. Mr. Girault stated that for clarification the motion should be restated.

Request for
Production No. 14

2074

Alderman Garcia stated that she is going to retract her motion because she is going to look like the bad person here. Ms. Garcia stated that she had made her point and I do appreciate Ms. Denny's 22 years. She hopes that everyone understands that this is not personal but when it was brought to her attention, I did not go hunting for it, I thought we had to look at it and it is my duty to look at it. Ms. Garcia stated that she is really upset with the people here tonight because it makes it look like a circus but I am going ahead and retract my motion and whoever wants to make another motion so be it.

Alderman Sierra retracted his second to the motion.

Mayor Pro-tem McCormick made a motion to put in Ms. Denny's personnel file a written reprimand concerning the charge on the city credit card, please have it stated that it was corrected before the City was out any money and it was an honest mistake and this council accepts that. The motion died for a lack of a second.

Alderman Mendoza made a motion to put a written reprimand like Ms. McCormick stated and be placed on probation for 2 months and suspension for 2 weeks without pay and the probation starts after the 2 weeks suspension, effective starting on Monday, February 5, 2001. Ms. Denny will be evaluated after the 60 days. Alderman Sierra seconded motion. Ms. McCormick stated that she felt 2 weeks suspension was a little excessive. Ms. Denny will retain all her titles. The vote was Mendoza, Sierra, Acevedo and Garcia in favor and McCormick opposed. Motion passed.

Mayor Abrego stated that there is no action to be taken on items 5, 6 and 7.

<u>Adjournment</u>

Mayor Abrego adjourned the meeting at 8:30 p.m.


Mayor                                                    City Secretary

*Mayor Manuel Abrego*                                    *Pam Denny*

Manuel Abrego                                            Pam Denny


Request for
Production No. 14