

# TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS

Rick Perry
GOVERNOR

Edwina P. Carrington
EXECUTIVE DIRECTOR

**BOARD MEMBERS**
Michael E. Jones, *Chair*
Elizabeth Anderson
Shadrick Bogany
C. Kent Conine
Vidal Gonzalez
Norberto Salinas

Certified Mail, Return Receipt Required
7001 0360 0003 6409 2403

July 25, 2002



JUL 29 2002

The Honorable Tom Jones
Mayor, City of Los Fresnos
209 North Arroyo Blvd
Los Fresnos, TX 78566

RE:  HOME Program, Home Buyer Assistance (HBA) Contract #538040
     Evaluation of Response to Monitoring and Assessment Review dated February 26, 2002
     Contract Budget Amount $250,000, Administration Budget Amount $10,000

Dear Mayor Jones:

The Compliance Division of the Texas Department of Housing and Community Affairs (TDHCA) reviewed your March 22, 2002 response to our monitoring letter of February 26, 2002. TDHCA found that the City of Los Fresnos (City) failed to provide adequate programmatic and fiscal documentation to resolve the non-compliance findings. The failure of the City to demonstrate that it effectively managed the federal funds has resulted in $200,837.48 in disallowed costs. This amount includes $195,412.42 of contract and administration funds issued to the City, $425.06 for funds issued directly to homebuyers (see Finding #8) and $5,000 in a bank account from a previous grant (see Finding #14).

The scope of this review did not include other TDHCA contracts previously administered by the City. However, during the course of the review, it came to our attention that other TDHCA contracts may contain the same type of irregularities. TDHCA or another oversight entity may at a later date, review the supporting documentation for HOME contracts 537034 and 534264 to determine if proper contract administration occurred.

The Summary of Findings (page 3 of this report) summarizes all findings applicable to each property address. All findings for each property address must be cleared for costs to be allowable for that address. Refer to the text of each finding in this report and in the original Monitoring and Assessment Review dated February 26, 2002 (enclosed) for detailed information on each finding.

Request for
Production No. 46



**EXHIBIT**
D

*Visit us on the world wide web at: www.tdhca.state.tx.us*
07 SABINE - SUITE 400 • P. O. BOX 13941 • AUSTIN, TEXAS 78711-3941 • (512) 475-3800
♻ *Printed on recycled paper*

In order to close-out this contract, the City must submit a revised Certificate of Contract Completion (also enclosed). The revised version should include allowable contract costs only.

Within thirty days, the City must submit the requested documentation, reimburse TDHCA the disallowed costs of $190,837.48, or submit an acceptable repayment plan. On July 18, 2002, TDHCA received $10,000 for the property at 404 S. Brazil. Failure to submit the requested documentation, or to submit payment to TDHCA for $190,837.48, or to submit an acceptable payment plan within thirty days after receipt of this letter, will result in the institution of legal proceedings against the City. If you have any questions, please contact Lucy Treviño at (512) 475-2550.

Sincerely,

Suzanne Phillips
Director, Compliance Division


Enclosures:     Monitoring and Assessment Review dated February 26, 2002
                Certificate of Contract Completion


cc:     Gavino Sotelo, Interim City Administrator, City of Los Fresnos
        Alma Villarreal, Community Development Director, City of Los Fresnos
        Paul Cowen, Chief of Staff, Senator Eddie Lucio, Jr.
        Ruth Cedillo, Deputy Executive Director, TDHCA
        Anne Paddock, Deputy General Counsel, TDHCA
        Jeannie Arellano, HOME Program Manager, TDHCA

Request for
Production No. 46

City of Los Presas
July 25, 2002

# SUMMARY OF FINDINGS

| Address | Project Amount | Findings | | | | | | | | | | | | | | | | | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
| 207 E. 9th St. | $10,000.00 | X | X | X | | | | X | X | | | | | | | X | | | * $10,000.00 |
| 105 Ash St. | $10,000.00 | X | X | X | | | | | | | | | | | | X | | | * $10,000.00 |
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | * $10,000.00 |
| 602 Legionnaire | $10,000.00 | X | X | X | | | | | | X | | | X | | | X | | | * $10,000.00 |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | * $10,000.00 |
| 115 N. Canal | $10,000.00 | X | | X | | | | X | | | | | X | | | X | | | $10,000.00 |
| 302 W. 6th St. | $10,000.00 | X | | X | | | | X | | | | X | X | X | | | | | $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | $10,000.00 |
| 104 E. 9th St. | $10,000.00 | X | | X | | | | | | X | | | | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | | X | X | | | | X | X | | | X | | | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |
| 526 Legion Trail ($3,100 refund) | $ 6,900.00 | X | | X | | | | | | X | | | X | | | X | | | $ 6,900.00 |
| 503 Legion Trail | $10,000.00 | X | X | X | | | | | | X | | | X | | | | | | $10,000.00 |
| 510 Legion Hall | $10,000.00 | | X | X | | | | | | | | | | | | | | | $10,000.00 |
| 109 Ash | $10,000.00 | | | X | | | | X | | X | | | | | | | | | $ 425.06 |
| 517 Legion Trail | $10,000.00 | | | X | | | | | | X | | | | | | | | | ?? |
| 514 Legion Hall | $10,000.00 | | | X | | | | | | X | | | | | | | | | ?? |
| 209 W. 6th St. | $10,000.00 | | | X | | | | | | X | | | | | | | | | ?? |
| *Administrative expenses* | $ 9,512.42 | | | | X | | | | | | | | | | | | | | $ 9,512.42 |
| 523 Legion Hall ($1,000 refund) | $ 9,000.00 | | | X | | | | | | | | | X | | | X | | | $ 9,000.00 |
| *Unidentified bank funds* | $ 5,000.00 | | | | | | | | | | | | | | X | | | | $ 5,000.00 |
| Failure to respond to audit resolution letter | | | | | | | | | | | | | | | | | X | | - |
| Failure to submit evidence of evaluation of available CPA services | | | | | | | | | | | | | | | | | | X | - |
| | | Missing Documents | Eligibility | Match | Administration | Conflict of Interest | Conflicting Addresses | Conflicting Owner | Funds Paid to Homeowner | Lots Only/ Backdated File | 3rd Lien | Principal Residence | Affordability/ Construction | Underwriting | Accounting/ Bank Records | Loan Closing Documents | Single Audit Response | CPA Procurement | |
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
| **Total Disallowed Costs** | | | | | | | | | | | | | | | | | | | **$200,837.48** |

NOTE: The costs associated with each property address are disallowed for violation of multiple federal requirements. <u>All findings for each property address must be cleared for costs associated with that address to be allowable.</u> TDHCA may reevaluate these costs upon the receipt of additional documentation from the City, if any.

\* These costs are disallowed due to lack of income eligibility or conflict of interest, in the case of 404 S. Brazil. We do not anticipate that any additional information submitted will resolve the disallowed costs associated with these addresses. Note: On July 18, 2002, TDHCA received a $10,000 check for 404 S. Brazil (See finding #5).

Page 3 of 14

Request for
Production No. 46

City of Los Fresnos
July 25, 2002

## Finding #1 – Required documents missing

### From Monitoring and Assessment Review dated February 26, 2002:

*Repeat finding noted in October 11, 2000 and June 20, 2001 letters.* A review of the homeowner case files indicated that the files were not maintained as outlined in the HOME Project Implementation Manual. The City was unable to provide required documentation after three requests by TDHCA monitoring staff for the information.

The City did not provide timely submission of documents, did not properly apply HOME program rules and regulations, and did not comply with record keeping requirements.

Failure to adequately maintain required file documentation does not ensure that the program was administered in a manner that operated the homebuyer program in a fair, equitable, and consistent manner that complies with all applicable HOME Program, state and federal regulations.

### Evaluation of the City's Response

The response information and documentation did not satisfy the requirements of the contract, 24 CFR Part 92, and the HOME Program Implementation Manual. The City failed to provide adequate documentation for 17 HBA files. Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 207 E. 9th St. | $10,000.00 | X | X | X | | | | X | X | | | | | | | X | | | • $10,000.00 |
| 105 Ash St. | $10,000.00 | X | X | X | | | | | | | | | X | | | X | | | • $10,000.00 |
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | • $10,000.00 |
| 602 Legionnaire | $10,000.00 | X | X | X | | | | | X | | | | X | | | X | | | • $10,000.00 |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | • $10,000.00 |
| 115 N. Canal | $10,000.00 | X | | X | | | | | X | | | | X | | | X | | | $10,000.00 |
| 302 W. 6th St. | $10,000.00 | X | | X | | | | | X | | | X | X | X | | | | | $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | $10,000.00 |
| 104 E. 9th St. | $10,000.00 | X | | X | | | | | | X | | X | | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X | | X | | | | | X | | | X | X | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | X | X | | | | | X | X | | | X | | | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X | | X | | | | | X | | | X | X | | | X | | | $10,000.00 |
| 526 Legion Trail ($3,100 refund) | $ 6,900.00 | X | | X | | | | X | | | | X | | | | X | | | $ 6,900.00 |
| 503 Legion Trail | $10,000.00 | X | X | X | | | | | X | | | | X | | | | | | $10,000.00 |

NOTE:    *The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

NOTE:    737 Carnation did not close and the City refunded $10,000 to TDHCA. This property is not included in the disallowed cost column.

Request for
Production No. 46

---

| Finding #2 – Income eligibility documentation was not in compliance with HOME Program rules |
|---|

**From Monitoring and Assessment Review dated February 26, 2002:**

*Repeat finding noted in October 11, 2000 and June 20, 2001 letters.* Homeowner case files did not have adequate documentation to support the application intake and approval process or a summary of the calculations used to determine income eligibility of applicants who received assistance.

Verification of income eligibility expires after a period of six months. An update of the homebuyer's income will be required if more than six months has elapsed between initial verification and occupancy of the property.

The homebuyer must be low income at the time the household initially occupies the property or at the time the HOME funds are invested, whichever is later.

Failure to properly maintain proper documentation and accurately calculate eligibility may result in disallowed costs, affect future funding and will result in the City being deemed a high risk contractor.

**Evaluation of the City's Response**

The City failed to ensure and verify that all program beneficiaries were qualified as low income households as required by the contract, 24 CFR Part 92 and the HOME Program Implementation Manual.

The incomes of seven assisted households were either over the income limit (not eligible) or could not be verified for eligibility. A complete file was reviewed for 510 Legion Hall for a loan closing that occurred on December 15, 1999 ($10,000). However, income verification for this household was completed on December 1998. Verification of income eligibility expires after a period of six months. The response contained no documentation to support that income for this beneficiary was re-verified within six months prior to the loan closing date. Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

**Findings**

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 207 E. 9th St. | $10,000.00 | X | X | X | | | | X | X | | | | | | | X | | | • $10,000.00 |
| 105 Ash St. | $10,000.00 | X | X | X | | | | | | | | | X | | | X | | | • $10,000.00 |
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | • $10,000.00 |
| 602 Legionnaire | $10,000.00 | X | X | X | | | | | | X | | | X | | | X | | | • $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | $10,000.00 |
| 503 Legion Trail | $10,000.00 | X | X | X | | | | | X | | | | X | | | | | | $10,000.00 |
| 510 Legion Hall | $10,000.00 | | X | X | | | | | | | | | | | | | | | $10,000.00 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

---

| Finding #3 – Local Match not documented in accordance with HOME Program rules |
|---|

**From Monitoring and Assessment Review dated February 26, 2002:**

*Repeat finding noted in October 11, 2000 and June 20, 2001 letters.* The City did not adequately document the local match commitment for Homebuyer counseling and training. The realty company letter submitted in response to this finding does not meet HOME Program requirements. The letter failed to quantify the number of assisted attendees and the value of the services offered. Failure to adequately and accurately document match funds may affect future funding.

Request for
Production No. 46

## Evaluation of the City's Response

The Match documentation submitted does not meet the Match documentation requirements under the HOME Final Rule and the terms of the contract.

The response submitted contains names of individuals, but not all are homebuyers under contract #538040. The City did not provide correct names and dates of those homebuyers receiving counseling, name of person(s) performing training, or the methodology used to determine the dollar amount of Match. Each $10,000 of HBA requires $500 in Match.

If acceptable Match documentation or an alternatively-approved Match method is not provided, additional costs may be disallowed.

---

## Finding #4 – Administrative draw requests were not supported by back-up documentation

### From Monitoring and Assessment Review dated February 26, 2002:

The City did not provide supporting documentation for the administrative funds drawn. Failure to maintain the required documentation in support of the administrative costs may result in disallowed costs ($9,512.42), affect future funding, and result in the City being deemed a high risk contractor.

### Evaluation of the City's Response

The City failed to provide adequate documentation to support administrative expenses for salaries of city staff. Under Texas Local Government Code Section 22.073, the City Secretary serves as general accountant and guardian of records of receipts and disbursements. The secretary is also to carefully guard all contracts made by the governing body.

The City's response submitted from the City Secretary is not consistent with her responsibilities as City Secretary and HOME Contract Administrator. The City Secretary was authorized under the contract to execute the contract on the City's behalf. Her duties also included signing Requests for Payment of HOME funds. The City Secretary's signature is found on all City checks issued under this contract.

The Contractor Administrator has a duty to effectively manage the contract in compliance with all applicable record-keeping and federal, state, and local regulations.

---

## Finding #5 – Conflict of interest issues involving City employee

### From Monitoring and Assessment Review dated February 26, 2002:

HOME conflict of interest provisions state that no person who is an employee of a sub-recipient receiving HOME funds may have any interest in any contract, sub-contract or agreement, or the proceeds, either for themselves or those whom they have family or business ties, during their tenure or for one year thereafter.

Documentation in case files indicated that a city employee family member received financial benefits from the HOME program both as a recipient and as a seller of property for the household assisted at 404 S. Brazil.

Seller used the vehicle of a Trust as owner. Documentation in files indicates the father of a city employee is the property owner.

Another City employee, the employee's supervisor, notarized the signature on the Warranty Deed with Vendor's Lien for the property located at 600 W. 10th Street. The employee supervisor also signed the Project Set-up and HOME Program Project Completion reports sent to TDHCA as Grantee's Authorized Official. The case files do not indicate that the city official followed written policies and procedures for conflict of interest guidelines.

Request for
Production No. 46

**Evaluation of the City's Response**

The City did not address the Conflict of Interest issues. The City also failed to provide requested information and documentation concerning these issues. The City did not provide a written explanation concerning the questioned transactions involving a City employee and immediate family members.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | **Findings** | | | | | | | | |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | * $10,000.00 |
| 600 W. 10ᵗʰ St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements.  All findings for each property address must be cleared for costs associated with that address to be allowable.*

The City responded that the City Attorney would contact TDHCA directly. Contrary to the information provided by the City, the attorney left a telephone message for TDHCA staff shortly after the monitoring visit. He did not subsequently return two messages left by TDHCA staff. Until last week, TDHCA had not received requested documentation or other calls from the attorney.

Subsequent to the TDHCA monitoring visit, the City hired the same attorney as the City Attorney. TDHCA informed the Mayor and Community Development Director that the attorney prepared loan documents for at least nine of the HBA loans. Other loan documents may have been prepared by the City Attorney. Requests for submission of complete loan documentation to TDHCA by the City or the City Attorney to determine the exact number of loan documents prepared by the City Attorney were not complied with. A letter from the City Attorney was received on May 23, 2002. He failed to provide any additional information or additional documentation.

In the City's response, TDHCA was provided information that a City Alderwoman signed HBA checks that were received by her mother's realty company. The City did not disclose what actions, if any, were taken as a result of this Conflict of Interest.

NOTE: On July 18, 2002, TDHCA received correspondence from the City Attorney and a $10,000 check for 404 S. Brazil. The receipt of this check does not negate the request for documentation. The check also does not negate the fact that the transaction violating the Conflict of Interest provisions occurred.

## Finding #6 – Conflicting addresses were used on project set-up and completion reports and closing documentation

**From Monitoring and Assessment Review dated February 26, 2002:**

Case files contained conflicting addresses for set-up and property documentation submitted. The City did not exercise due care to verify property addresses where assistance was granted. Loan and legal documents were filed using the wrong property address.

**Evaluation of the City's Response**

No additional information was provided for three files that have different addresses in legal and loan documentation versus TDHCA set-up and completion reports. Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Findings** | | | | | | | | | | | | |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | | X | | | | | X | X | | | X | | | · $10,000.00 |
| 318 E. 8ᵗʰ St. | $10,000.00 | X | | X | | | X | X | | | | X | X | | | X | | | $10,000.00 |

Request for
Production No. 46

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements.  All findings for each property address must be cleared for costs associated with that address to be allowable.*

The City failed to provide appropriate oversight to ensure that HBA funds were used by the homebuyer for the properties listed in the set-up and project completion forms.  These properties must be the principal residence of the assisted household as required by HOME Program regulations and 24 CFR Part 92.

---

**Finding #7 – Cameron County tax records do not list the homebuyer as recorded owners of the assisted property**

---

**From Monitoring and Assessment Review dated February 26, 2002:**

A review of Cameron County Tax Appraisal records did not show ownership in buyers name for 3 properties.

**Evaluation of the City's Response**

The City failed to determine that properties were in the homebuyers' name.  County tax records report alternate owners for some of the assisted properties.  Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 207 E. 9th St. | $10,000.00 | X | X | X | | | | X | X | | | | | | | X | | | * $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | | X | X | | | | X | X | | | X | | | $10,000.00 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements.  All findings for each property address must be cleared for costs associated with that address to be allowable.*

---

**Finding #8 – Settlement Statements show money returned to borrower at loan closing.  Returning Homebuyer Assistance funds to the homeowner is not a HOME Program eligible cost**

---

**From Monitoring and Assessment Review dated February 26, 2002:**

Eligible costs for Homebuyer Assistance funds are for closing costs or as down payment assistance.  Payments to homeowners are not eligible costs.  Any funds remaining after closing costs or down payments assistance costs are paid at closing shall be returned to the Department.

The case file for the property at 302 W. 6th did not contain a HUD-1 closing statement.  A "Closing Statement" invoice in lieu of a HUD-1 settlement statement, prepared by an attorney, was submitted.  Total HBA funds awarded were not accounted for on the invoice.  The unaccounted funds shall be repaid to TDHCA.

**Evaluation of the City's Response**

The City failed to provide appropriate oversight to ensure that the funds were disbursed at closing in accordance with HOME rules.  HBA funds cannot be distributed directly to homebuyers.  The City indicated that homebuyers were contacted and a refund of homebuyer funds was requested.  No funds have been returned to TDHCA.

Request for
Production No. 46

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---------|---------------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|------------------|
| 207 E. 9th St. | $10,000.00 | X | X | X |  |  |  | X | X |  |  |  |  |  |  | X |  |  | * $10,000.00 |
| 115 N. Canal | $10,000.00 | X |  | X |  |  |  |  | X |  |  |  | X |  |  | X |  |  | $10,000.00 |
| 302 W. 6th St. | $10,000.00 | X |  | X |  |  |  |  | X |  |  | X | X | X |  |  |  |  | $10,000.00 |
| 503 Legion Trail | $10,000.00 | X | X | X |  |  |  |  | X |  |  |  | X |  |  |  |  |  | $10,000.00 |
| 109 Ash | $10,000.00 |  |  | X |  |  |  |  | X |  | X |  |  |  |  |  |  |  | $  425.06 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements.  All findings for each property address must be cleared for costs associated with that address to be allowable.*

|  | Refund Amount |
|--|---------------|
| 207 E. 9th St. | $  15.23 |
| 503 Legion Trail | $ 364.36 |
| 115 N. Canal | $ 600.00 |
| 302 W. 6th St. | $ 528.00 |
| 109 Ash St. | $ 425.06 |
|  | $1,932.65 |

---

**Finding #9 – Tax Appraisal records show the date of sale prior to the date on the settlement statement.  Three properties are shown on tax appraisal records as lots only with no property improvements (housing unit) present**

**From Monitoring and Assessment Review dated February 26, 2002:**

Homebuyer assistance funds cannot be awarded retroactively to fund down payment or closing costs for a previously purchased home.  HBA funds may not be used to purchase lots or finance interim construction costs of a builder.

Cameron County Tax Appraisal records list the properties at 523 Legion Hall, 602 Legionnaire, and 526 Legion Trail as lots only.  HOME Program property regulations require that the property be a single unit home.

**Evaluation of the City's Response**

The City did not provide a written explanation for the use of HBA funds to purchase a lot prior to the actual construction and purchase of a home.  HBA funds cannot be used for interim financing to purchase land.  Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---------|---------------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|------------------|
| 602 Legionnaire | $10,000.00 | X | X | X |  |  |  |  |  | X |  |  | X |  |  | X |  |  | * $10,000.00 |
| 104 E. 9th St. | $10,000.00 | X |  | X |  |  |  |  |  | X |  | X |  |  |  | X |  |  | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X |  | X |  |  |  |  |  | X |  | X | X |  |  | X |  |  | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X |  | X |  |  |  |  |  | X |  | X | X |  |  | X |  |  | $10,000.00 |
| 526 Legion Trail ($3,100 refund) | $ 6,900.00 | X |  | X |  |  |  |  |  | X |  |  | X |  |  | X |  |  | $ 6,900.00 |
| 523 Legion Hall ($1,000 refund) | $ 9,000.00 |  |  | X |  |  |  |  |  | X |  |  | X |  |  | X |  |  | $ 9,000.00 |

*NOTE:     The costs associated with each property address are disallowed for violation of multiple federal requirements.  All findings for each property address must be cleared for costs associated with that address to be allowable.*

Request for
Production No. 46

| Finding #10 – Homebuyer Assistance Loans were made placing TDHCA in the 3rd lien position |
|---|

**From Monitoring and Assessment Review dated February 26, 2002:**

HBA loans for 3 properties were secured with 3rd lien notes. HOME Program rules require the execution of 2nd lien notes listing the Texas Department of Housing and Community Affairs as the 2nd lien holder.

**Evaluation of the City's Response**

NO ADDITIONAL RESPONSE REQUIRED. The HOME Program contract and the HOME Implementation Manual require that HBA loans occupy the 2nd lien position. The City did not provide a written explanation as to why TDHCA was placed as a 3rd lien holder rather than in the 2nd lien position.

TDHCA 3rd lien positions cannot be permitted without prior written consent of the Department. However, since multiple funding sources existed, no additional response is required and no costs will be disallowed due to this deficiency.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 109 Ash | $10,000.00 | | | X | | | | | X | | X | | | | | | | | $   425.06 |
| 517 Legion Trail | $10,000.00 | | | X | | | | | | | X | | X | | | | | | ?? |
| 514 Legion Hall | $10,000.00 | | | X | | | | | | | X | | | | | | | | ?? |
| 209 W. 6th St. | $10,000.00 | | | X | | | | | | | X | | | | | | | | ?? |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

| Finding #11 – Case Files did not contain the required certification that properties are the principal residence of the assisted homeowner |
|---|

**From Monitoring and Assessment Review dated February 26, 2002:**

The City did not ensure that homebuyer files contained documentation that the homebuyer will use the property as its principal residence. The principal residency rule prohibits temporary subleases.

**Evaluation of the City's Response**

A "Certification of Principal Residence" form was not submitted for each address listed below. A sample form was faxed to the City on July 17, 2002. Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | •   $10,000.00 |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | •   $10,000.00 |
| 302 W. 6th St. | $10,000.00 | X | | X | | | | X | | | | X | X | X | | | | | $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | $10,000.00 |
| 104 E. 9th St. | $10,000.00 | X | | X | | | | | | X | | X | | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | | X | X | | | | X | X | | | X | | | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |

Request for
Production No. 46

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

---

**Finding #12 – Case Files do not contain evidence that the homebuyers were informed of the affordability and condition of the property**

---

**From Monitoring and Assessment Review dated February 26, 2002:**

The City did not provide adequate documentation to determine if HOME Program rules and state and federal requirements for affordability and construction standards were followed.

Assurance was not provided that properties met HOME Program guidelines and the assisted homebuyer was informed of the affordability and condition of the property.

**Evaluation of the City's Response**

Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation.

| Address | Project Amount | Findings | | | | | | | | | | | | | | | | | Disallowed Costs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
| 105 Ash St. | $10,000.00 | X | X | X | | | | | | | | | | X | | | X | | | * $10,000.00 |
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | | X | X | | | X | | | * $10,000.00 |
| 602 Legionnaire | $10,000.00 | X | X | X | | | | | | X | | | | X | | | X | | | * $10,000.00 |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | | X | X | | | X | | | * $10,000.00 |
| 115 N. Canal | $10,000.00 | X | | X | | | | | X | | | | | X | | | X | | | $10,000.00 |
| 302 W. 6th St. | $10,000.00 | X | | X | | | | | X | | | X | X | X | | | | | | $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | | X | X | | | X | | | $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | | X | X | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | X | | | | | | | X | X | | | X | | | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X | | X | | | | | X | | | X | X | | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | | X | X | | | | | X | X | | | X | | | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X | | X | | | | | X | | | X | X | | | | X | | | $10,000.00 |
| 526 Legion Trail ($3,100 refund) | $ 6,900.00 | X | | X | | | | | | X | | | | X | | | X | | | $ 6,900.00 |
| 503 Legion Trail | $10,000.00 | X | X | X | | | | X | | | | | | X | | | | | | $10,000.00 |
| 517 Legion Trail | $10,000.00 | | | X | | | | | | | X | | X | | | | | | | ?? |
| 523 Legion Hall ($1,000 refund) | $ 9,000.00 | | | X | | | | | X | | | | X | | | X | | | | $ 9,000.00 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

---

**Finding #13 – The City did not demonstrate adequate capacity to properly manage underwriting procedures**

---

**From Monitoring and Assessment Review dated February 26, 2002:**

The property located at 302 W. 6th Street is in loan default according to notification sent to TDHCA. The case file indicates proper underwriting procedures were not followed. A discrepancy was also noted between the income amount on the Project Setup and the Loan Application.

Request for
Production No. 46

The Department has been notified that the above listed property is in default. Improper underwriting and loan processing procedures may have resulted in the property being placed in loan default. An attorney for the private party carrying the note to the homebuyer contacted TDHCA stating the property is in default and the first lien holder is not interested in repossessing the property. The note was owner-financed for twenty years at an interest rate of ten percent. The case file did not contain a loan application, current employment information, income verification, or an appraisal. Cameron County Tax Appraisal records as of November 7, 2001 show the property valued as land only for $7,812.00. A HUD-1 settlement statement was not submitted to TDHCA. The case file contained a copy of the homeowner's 1999 tax return showing gross income of $9,052.00. The monthly payment of principal and interest was 49% of monthly income. A conflicting Set Up form recording $1,048 per month in income was also submitted to the Department. The case file did not contain documentation supporting that amount.

The City did not follow proper underwriting procedures to determine buyer's ability to meet the payment to earnings ratio for this loan. The City failed to correct the income discrepancy between the Project Setup and the loan application.

### Evaluation of the City's Response

The City did not exercise proper oversight and management of the underwriting of the HBA loans. The City responded that the City Attorney would contact TDHCA directly and indicated that underwriting was performed by 3rd parties. The property remains in default. Other properties may also be in default of their loans.

| Address | Project Amount | Findings | | | | | | | | | | | | | | | | | Disallowed Costs |
|---------|---------------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|------------------|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
| 302 W. 6th St. | $10,000.00 | X | | X | | | | | X | | | X | X | X | | | | | | $10,000.00 |

*NOTE:    The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

## Finding #14 – The City did not provide accounting and bank records in support of contract expenditures

### From Monitoring and Assessment Review dated February 26, 2002:

The City was unable to provide accounting and bank records to reconcile grant funds. Wells Fargo Bank records for the 1998 HOME Escrow Account were not included for review.

Records reviewed indicated an account balance of $5,000 was transferred from a bank account used for a previous grant to a new account at First National Bank on April 12, 2000. The initial $5,000 in funds could not be reconciled to funds drawn. City failure to provide Wells Fargo Bank records prevented the reconciliation of funds drawn to funds disbursed.

### Evaluation of the City's Response

The City failed to provide complete accounting and bank records for the receipt and disbursement of HBA funds. Because records are incomplete, TDHCA is unable to determine if every project was fully funded. The source of the $5,000 balance at First National Bank HOME Trust Account was not identified. The City did not provide documentation to determine if those funds were HOME funds from Contract 538040 or 537034. Those funds must be returned to TDHCA.

NOTE: The following Well Fargo HBA disbursement checks could not be identified (*1) or referenced homebuyers not assisted under contract 538040 (*2). Checks 1003 and 1004 were identified as paid to homebuyers under contract 537034. Additional review of previous contracts may be undertaken by TDHCA or another entity at a later date.

|  |  |  |
|--|--|--|
| Check 1001 | $ 4,100 | *1 |
| Check 1003 | $ 4,900 | *2 |
| Check 1004 | $ 5,100 | *2 |

Request for
Production No. 46

| Finding #15 – The City did not submit closing documentation to TDHCA as required by HOME Program regulations |
|---|

**From Monitoring and Assessment Review dated February 26, 2002:**

The City has not provided loan closing documentation to TDHCA. HOME Program regulations require that copies of the loan application, the original note, a recorded and certified copy of the deed of trust, and a certified copy of the HUD-1 Settlement Statement be forwarded for Department.

**Evaluation of the City's Response**

Refer to February 26, 2002 Monitoring and Assessment Review for detailed list of required documentation. The City failed to provide original loan documents for the following:

| | | Findings | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | Project Amount | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | Disallowed Costs |
| 207 E. 9th St. | $10,000.00 | X | X | X | | | | X | X | | | | | | | X | | | * $10,000.00 |
| 105 Ash St. | $10,000.00 | X | X | X | | | | | | | | | X | | | X | | | * $10,000.00 |
| 506 Legion Hall | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | * $10,000.00 |
| 602 Legionnaire | $10,000.00 | X | X | X | | | | | | X | | | X | | | X | | | * $10,000.00 |
| 404 S. Brazil | $10,000.00 | X | | X | | X | | | | | | X | X | | | X | | | * $10,000.00 |
| 115 N. Canal | $10,000.00 | X | | X | | | | | X | | | | X | | | X | | | $10,000.00 |
| 319 Canal | $10,000.00 | X | X | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 600 W. 10th St. | $10,000.00 | X | | X | | X | | X | | | | X | X | | | X | | | $10,000.00 |
| 525 Legion Trail | $10,000.00 | X | X | X | | | | | | | | X | X | | | X | | | $10,000.00 |
| 104 E. 9th St. | $10,000.00 | X | | X | | | | | | X | | X | | | | X | | | $10,000.00 |
| 114 Pecan (113 Ebony) | $10,000.00 | X | | X | | | X | | | | | X | X | | | X | | | $10,000.00 |
| 111 W. 8th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |
| 318 E. 8th St. | $10,000.00 | X | | X | | | X | X | | | | X | X | | | X | | | $10,000.00 |
| 300 W. 6th St. | $10,000.00 | X | | X | | | | | | X | | X | X | | | X | | | $10,000.00 |
| 526 Legion Trail ($3,100 refund) | $ 6,900.00 | X | | X | | | | | | X | | | X | | | X | | | $ 6,900.00 |
| 523 Legion Hall ($1,000 refund) | $ 9,000.00 | | | X | | | | | | X | | | X | | | X | | | $ 9,000.00 |

*NOTE:     The costs associated with each property address are disallowed for violation of multiple federal requirements. All findings for each property address must be cleared for costs associated with that address to be allowable.*

Contract 538040, Exhibit A, Performance Statement requires that each loan shall be evidenced by a 2nd Lien Note and Deed of Trust. The HOME Investment Partnerships Program 1998 Implementation Manual, Section 5.6, Subsidy Recapture states:

*"The second lien documents should be forwarded to the Department as soon as they are received from being recorded."*

The attachment, "Characteristics of Subordinate Mortgage Note – Second Mortgage", further states the **Acceleration Trigger** is:

*"Principal Only Due Upon Sale/Transfer of Title, Change in Owner-Occupancy Status, Default of First Mortgage, and or Sale/Transfer of Title or Payoff of the First Mortgage Loan."*

Request for Production No. 46

---

**Finding #16 – The City did not respond to TDHCA's September 27, 2001 audit resolution letter**

---

## From Monitoring and Assessment Review dated February 26, 2002:

The City failed to respond to Department request for clarification of Single Audit for Fiscal Year ending September 30, 2000 audit items.  Correspondence was sent September 27, 2001 requesting information to be provided by October 27, 2001.

The City has failed to timely respond to a TDHCA request for information as required by Single Audit regulations.

Failure to respond to audit resolution items can affect funding for current grants, affect future funding, and can result in the City being deemed a high risk contractor.

## Evaluation of the City's Response

The City failed to respond to the TDHCA's September 27, 2001 audit resolution letter as required by Single Audit regulations and 24 CFR Part 92.

---

**Finding #17 – The City failed to follow HOME Program, state and federal procurement requirements for securing professional services**

---

## From Monitoring and Assessment Review dated February 26, 2002:

City of Los Fresnos did not follow professional procurement requirements for the selection of a Certified Public Accountant for Fiscal Year ending September 30, 2001 audit.

No documentation for competitively selecting a CPA firm was available for review.  City staff stated that the City did not solicit multiple bids from CPA firms.

A copy of the engagement letter was not available for review.

## Evaluation of the City's Response

The City did not follow proper professional procurement requirements for the selection of a Certified Public Accountant for the Fiscal Year ending September 30, 2001 single audit report.

Professional service contractors must be selected based on open competition.  While a competitive process must be used, Contractor localities must not select professional service contractors based solely on low bid.  This would violate the State of Texas' Professional Services Procurement Act.  Contractor localities "shall select and award such contracts and engage such services based on demonstrated competence and qualifications for the type of professional services to be performed and fair and reasonable prices".

The City's 2001 Single Audit has been received and reviewed by the Compliance Division.  An audit resolution letter was sent to the City on July 16, 2002 outlining five deficiencies.  A response from the City is due by August 16, 2002.

Request for
Production No. 46



TO:        ALMA VILLARREAL, CDC

FROM:      PAM DENNY, CITY SECRETARY

SUBJECT:   1998 HOME PROGRAM

DATE:      MARCH 18, 2002


You requested time sheets to support the actual time worked on the 1998 Home Program for administrative purposes. I was never told to keep a time sheet for time I spent depositing check, or writing out checks when I was instructed to do so by Mr. Paul Chavez. As far as I know Mr. Chavez or anyone else that dealt with the 1998 Home Program did not keep a time sheet.

My time spent on the project was about 15-30 minutes each time when I did a voucher for the deposit and vouchers for checks.

Also, anytime Mr. Chavez asks me to notarize any paperwork I did so, I did not question him. I was only notarizing a signature of the person signing and nothing else.


Cc:   Mayor Manuel Abrego
      Ralph Hendrickson, 1998 Home Program Monitor
      Tom Andrews, City Attorney




EXHIBIT
E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PAULA REYNOLDS             ) (
     Plaintiff          ) (
                           ) (
VS.                        ) ( CIVIL ACTION NO. B-03-056
                           ) ( (JURY REQUESTED)
THE CITY OF LOS FRESNOS,    ) (
TEXAS, TOM ANDREWS, MANUEL ) (
ABREGO, JUAN C. SIERRA,     ) (
IDA GARCIA, MIGUEL MENDOZA,) (
RAY GARCIA, GONZALO         ) (
ACEVEDO, AND PAM DENNY,      ) (
INDIVIDUALLY AND IN THEIR   ) (
OFFICIAL CAPACITIES         ) (
     Defendants         ) (

---

ORAL DEPOSITION OF
THOMAS ANDREWS
DECEMBER 20, 2004



---

     ORAL DEPOSITION OF THOMAS ANDREWS, produced as

a witness at the instance of the PLAINTIFF, taken in

the above styled and numbered cause on DECEMBER 20,

2004, reported by DONNA McCOWN, Certified Court

Reporter No. 6625, in and for the State of Texas, at

the offices of Willette & Guerra, L.L.P., 1534 East 6th

Street, Suite 200, Brownsville, Texas, pursuant to the

Federal Rules of Civil Procedure.

EXHIBIT
F

## APPEARANCES

COUNSEL FOR PLAINTIFF:

      TERI L. DANISH
      RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
      1201 East Van Buren
      Brownsville, Texas  78520

      J. ANDREW CASEY
      RODRIGUEZ & NICOLAS, L.L.P.
      319 East Elizabeth Street
      Brownsville, Texas  78520

COUNSEL FOR DEFENDANTS:

      EILEEN M. LEEDS
      ANALISA FIGUEROA
      WILLETTE & GUERRA, L.L.P.
      1534 East 6th Street, Suite 200
      Brownsville, Texas  78520

      J.G. (GEOFF) WARBURTON
      LAW OFFICE OF J.G. (GEOFF) WARBURTON
      815 Ridgewood
      Brownsville, Texas  78520

ALSO PRESENT:
      Paula Reynolds

14:08:36  1    pretty big sum?

14:08:37  2        A.  4,000 people.  It's 50 bucks a head.

14:08:40  3        Q.  Okay.  In your mind, is that a lot of money to

14:08:42  4    the City?

14:08:42  5        A.  Not that much, but, I mean, in a way it was

14:08:47  6    because it was about half of their tax base for the

14:08:53  7    year.

14:08:53  8        Q.  Who was -- while you were city attorney, who

14:08:56  9    was the person that was primarily responsible for

14:08:58  10   handling HOMES?

14:09:02  11       A.  Alma Villarreal.

14:09:06  12       Q.  Do you know who Ms. Villarreal reported to?

14:09:10  13       A.  No, not really.

14:09:12  14       Q.  Did you ever have to work with Ms. Reynolds

14:09:15  15   with respect to the HOMES program?

14:09:18  16            MS. LEEDS:  Did you have to work is a yes

14:09:20  17   or no.

14:09:21  18            THE WITNESS:  Yes.

14:09:22  19       Q.  In what capacity did you work with

14:09:28  20   Ms. Reynolds?

14:09:28  21       A.  She was supposed to do some things for me.

14:09:39  22       Q.  Like what?

14:09:39  23       A.  Okay.  Like recreate time documents for people

14:09:46  24   who had worked on the program.

14:09:52  25       Q.  Anything else?

14:09:54  1        A.  We were going to recreate -- try and recreate

14:09:59  2   the files.

14:10:02  3        Q.  Anything else?

14:10:05  4        A.  No, not really.  I mean, I think that was

14:10:09  5   mostly it.

14:10:10  6        Q.  Did you work with Ms. Reynolds or have reason

14:10:13  7   to work with her in projects outside of the HOMES

14:10:17  8   program?

14:10:17  9        A.  Not that I remember.

14:10:19 10        Q.  Okay.  What was your interaction with

14:10:25 11   Ms. Villarreal?  On what basis would you have to work

14:10:28 12   with her?

14:10:28 13        A.  Basically, pretty much the same thing.

14:10:34 14        Q.  Do you remember what her title was?

14:10:36 15        A.  No.

14:10:36 16        Q.  Alma's?

14:10:38 17            Did you have problems working with

14:10:39 18   Ms. Villarreal?

14:10:41 19        A.  I had problems, yes.  I had problems working

14:10:45 20   with city employees, yes.

14:10:46 21        Q.  Did you have problems working with

14:10:48 22   Ms. Reynolds?

14:10:48 23        A.  No, not really.

14:10:51 24        Q.  What sorts of problems did you have with

14:10:55 25   Ms. Villarreal?

14:25:00  1     A.   They said they would have to -- to submit them

14:25:04  2  and they would have to look at them.

14:25:06  3     Q.   And sitting here today, you cannot recall who

14:25:08  4  you spoke with.

14:25:09  5     A.   No, I cannot.

14:25:10  6     Q.   Do you make notes of any conversations that you

14:25:13  7  have?

14:25:13  8     A.   No, I don't.

14:25:13  9     Q.   Did you report to city council or anybody at

14:25:17  10  the City of Los Fresnos what you were told by this

14:25:20  11  person from TDHCA?

14:25:21  12     A.   I can't answer the question.  I have to assert

14:25:23  13  the privilege.

14:25:24  14     Q.   Did you do anything independently to look at

14:25:33  15  the requirements for the HOMES program to see whether

14:25:37  16  or not it would be acceptable to recreate documents?

14:25:39  17     A.   No.

14:25:42  18     Q.   Did you do anything in your role as city

14:25:45  19  attorney to see whether or not any criminal laws might

14:25:48  20  be implicated with respect to recreating documents?

14:25:51  21     A.   There is never any law against recreating a

14:26:03  22  document.

14:26:04  23          MS. DANISH:  Objection, nonresponsive.

14:26:05  24     Q.   Did you do anything in your role as city

14:26:07  25  attorney to review any criminal law to determine

15:13:59  1          Q.   Did she ever report any issues of misuse of a

15:14:05  2    credit card to you?

15:14:07  3          A.   No, not to me.  Not that I know of.

15:14:25  4                   What credit card are you talking about?

15:14:27  5                   MS. LEEDS:  You can't ask questions.

15:14:30  6          Q.   Did she ever bring to your attention any misuse

15:14:39  7    of a City of Los Fresnos credit card by any city --

          8          A.   Not to me --

15:14:42  9          Q.   -- employee?

15:14:42 10          A.   No, I don't remember her doing that.

15:14:44 11          Q.   Okay.  You refer, in your discovery responses,

15:15:08 12    that you had given City Hall some -- or you got some

15:15:12 13    documents from City Hall and gave them to the police to

15:15:14 14    investigate Ms. Reynolds, I believe?  Do you recall

15:15:18 15    that?

15:15:19 16          A.   I had received copies of them.

15:15:21 17          Q.   Well, it says you obtained documents from City

15:15:23 18    Hall and gave them to the police.

15:15:24 19          A.   Yes.

15:15:25 20          Q.   All right.  What was the purpose of obtaining

15:15:27 21    those documents?

15:15:30 22          A.   I was told that the documents -- okay.  I was

15:15:40 23    given the documents, okay, in my capacity as city

15:15:47 24    prosecutor to have the police investigate to see

15:15:53 25    whether or not a charge should be brought.  All right?

15:15:58  1    And at that point in time -- was this against Paula

15:16:02  2    Reynolds?

15:16:02  3         Q.   I believe so.

15:16:03  4         A.   At that point in time, the documents that were

15:16:07  5    given me would have made it a class C misdemeanor,

15:16:11  6    which would have been tried in my court.

15:16:13  7         Q.   So misuse of the City credit card would have

15:16:16  8    been a class C misdemeanor?

15:16:18  9         A.   Well, all of these type cases -- okay.  Johnny

15:16:26 10    used to bring to me or somebody would bring to me to

15:16:30 11    make the complaint, because if it were to be tried in

15:16:34 12    the municipal court, the prosecutor's role in the

15:16:40 13    municipal court, he has the same jurisdiction as a

15:16:44 14    district attorney does in district court.  He totally

15:16:47 15    determines what's prosecuted and what's not prosecuted.

15:16:51 16              If it were a B or higher, I have to send

15:16:55 17    it down to the county attorney and the district

15:16:57 18    attorney downtown to be tried there.  If it were a

15:17:08 19    simple theft of an amount of money of $149 and some odd

15:17:15 20    cents, it would have been a misdemeanor tried in

15:17:18 21    municipal court.

15:17:20 22              MS. DANISH:  Objection, nonresponsive.

15:17:21 23         Q.   Would misuse of the City's credit card be a

15:17:24 24    class C misdemeanor?

15:17:26 25         A.   Possibly.

15:17:28  1      Q.  Okay.  And the police would be the appropriate

15:17:32  2  body to report misuse of a credit card like that,

15:17:36  3  correct?

15:17:36  4      A.  No.  Crimes are often reported to the

15:17:40  5  prosecuting attorney.

15:17:41  6      Q.  The prosecuting attorney or the police, would

15:17:43  7  you agree with me --

15:17:44  8      A.  Right.

15:17:44  9      Q.  -- that either of those entities would be the

15:17:46  10  appropriate person to tell?

15:17:47  11      A.  That's right.

15:17:47  12      Q.  Okay.

15:17:51  13      A.  And that's why they were telling me.

15:17:52  14      Q.  Right.  And whether or not you prosecute a

15:17:54  15  class C misdemeanor, that's within your discretion as

15:17:57  16  the city prosecutor.

15:17:58  17      A.  That's right.

15:17:59  18      Q.  And anything -- if I understand your testimony,

15:18:02  19  anything B and above goes down to Cameron County; is

          20  that correct?

15:18:04  21      A.  That's correct.

15:18:04  22      Q.  Okay.  You were present at the time that

15:18:19  23  Ms. Reynolds was terminated.  Who else was present?

15:18:22  24      A.  Can -- can you define "present"?

15:18:35  25      Q.  There.

15:32:08  1                    Mr. Andrews?

15:32:14  2                    MS. LEEDS:  You said item No. 4?

15:32:16  3                    MS. DANISH:  Exhibit No. 4.  This one.

15:32:20  4                    THE WITNESS:  I'm sorry.  Your question?

15:32:21  5        Q.  Even though Exhibit No. 4 refers to things that

15:32:25  6   happened in the past, this does not meet your

15:32:26  7   definition of --

          8        A.  No.  That's not a recreation.

15:32:27  9        Q.  -- quote/unquote, recreating a document.

15:32:29 10        A.  No.  I just asked her for a memorandum that

15:32:35 11   would -- because Ann was retiring and whatever, and I

15:32:37 12   asked her for a memorandum as to the mistakes that were

15:32:43 13   on her payroll, being a department head.  I asked all

15:32:48 14   the department heads for that.

15:32:50 15        Q.  Did any other department heads give you a memo

15:32:53 16   like Ms. Meyn?

15:32:54 17        A.  I do not remember.  Some of them -- I think

15:33:00 18   there was another one.

15:33:01 19        Q.  Do you recall telling anybody that Ms. Reynolds

15:33:03 20   was being fired for theft?

15:33:05 21        A.  No.  She was never fired for theft.

15:33:08 22        Q.  And so you deny telling anybody that?

15:33:10 23        A.  Yes.

15:33:11 24        Q.  Okay.

15:33:14 25                    MS. DANISH:  Let's take a quick break.

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3   PAULA REYNOLDS           ) (
              Plaintiff       ) (
 4                            ) (
     VS.                      ) ( CIVIL ACTION NO. B-03-056
 5                            ) ( (JURY REQUESTED)
     THE CITY OF LOS FRESNOS, ) (
 6   TEXAS, TOM ANDREWS, MANUEL ) (
     ABREGO, JUAN C. SIERRA,  ) (
 7   IDA GARCIA, MIGUEL MENDOZA,) (
     RAY GARCIA, GONZALO      ) (
 8   ACEVEDO, AND PAM DENNY,  ) (
     INDIVIDUALLY AND IN THEIR ) (
 9   OFFICIAL CAPACITIES      ) (
              Defendants      ) (
10

11                  REPORTER'S CERTIFICATE

12      I, Donna McCown, Certified Court Reporter, certify
     that the witness, THOMAS ANDREWS, was duly sworn by me,
13   and that the deposition is a true and correct record of
     the testimony given by the witness on DECEMBER 20,
14   2004; that the deposition was reported by me in
     stenograph and was subsequently transcribed under my
15   supervision.

16      I FURTHER CERTIFY that I am not a relative,
     employee, attorney or counsel of any of the parties,
17   nor a relative or employee of such attorney or counsel,
     nor am I financially interested in the action.

18                  WITNESS MY HAND on this the 3rd day of
19   January            , 2005.

20

21          Donna McCown by: RM
     DONNA McCOWN, CSR NO. 6623
22   Expiration Date: 12/31/05
     Bryant & Stingley, Inc., CRN No. 41
23   2010 East Harrison
     Harlingen, Texas  78550
24   (956) 428-0755

25
```

City of Los Fresnos
Downpayment Assistance Program
Home Contract # 538040

## Consolidated Administrative Time Sheet

### June 2000

| Name | Title | Pay Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Chavez | Grant Coordinator | 17.91 | | 3 | | | | | | | | | | | | | | 6 | | | 1 | | | | | | | | | | | |
| Pam Denny | City Secretary | 41.44 | | | | | | 1 | | | | | | | | | | | | | 3 | | | | | | | | | | | |
| Ruth Hernandez | Finance Director | 19.13 | | | | | | | | | | | | 3 | | | | | | | 1 | | | | | | | | | | | |
| Paula Reynolds | Administrative Assistant | 13.67 | | | | | | 1 | | | | | | | | | | | | | 1 | | | | | | | | | | | |

### July 2000

| Name | Title | Pay Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Chavez | Grant Coordinator | 17.91 | | 3 | | | | | 3 | | | | | | | | | | 4 | | | | | | | | | | | | | | |
| Pam Denny | City Secretary | 41.44 | | | | | | | 3 | | | | | | | | 2 | | | | | | | | | | | | | | | | |
| Ruth Hernandez | Finance Director | 19.13 | | | | | | | | | | | | | | | 1 | | | | | | | | | 2 | | | | | | | |
| Paula Reynolds | Administrative Assistant | 13.67 | | | | | | | | | | 1 | 1 | | | 1 | | | | | | | | | | 2 | | | | | | | |

### August 2000

| Name | Title | Pay Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Chavez | Grant Coordinator | 17.91 | | 3 | | | | | 3 | | | 2 | | | | | | | 4 | | | | | | | | | | | | | | |
| Pam Denny | City Secretary | 41.44 | | | | | | | 3 | | | | | | | | 2 | | | | | | | | | 2 | | | 1 | | 1 | | |
| Ruth Hernandez | Finance Director | 19.13 | | | | | | | | | | | | | | | 1 | | | | | | | | | 2 | | | | | 1 | | |
| Paula Reynolds | Administrative Assistant | 13.67 | | | | | | 1 | | | 1 | | | | | | 1 | | | | | | | | | | | | | | 1 | | |

### September 2000

| Name | Title | Pay Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Chavez | Grant Coordinator | 17.91 | | 4 | | | | | | | | | | | | | 8 | 3 | | | | | | | | | | | | | | 1 |
| Pam Denny | City Secretary | 41.44 | | | | | | 8 | | | | | | | | | 3 | | | | | | | | | | | | 3 | | | |
| Ruth Hernandez | Finance Director | 19.13 | | | | | | 3 | | | | | | | | | 3 | 1 | | | | | | | | 2 | | | | | | |
| Paula Reynolds | Administrative Assistant | 13.67 | | | | | | 4 | | | | | | | | | 2 | | | | | | | | | 2 | | | | | | |

### October 2000

| Name | Title | Pay Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Chavez | Grant Coordinator | 17.91 | | 4 | | | | | | | | | | | | | 2 | | 4 | | | | | | | | | | 1 | | | | |
| Pam Denny | City Secretary | 41.44 | | | | | | 8 | | | | | | | | | 2 | | | | | | | | | | | | | | | | |
| Ruth Hernandez | Finance Director | 19.13 | | | | | 1 | | | | | | | | | | | | 2 | | | | | | 2 | | 2 | | | | | | |
| Paula Reynolds | Administrative Assistant | 13.67 | | 2 | | | 3 | | | | | | | | | | | 1 | | | | | | | | | 2 | | | | | 3 | |

EXHIBIT
G

November 2000

| Name | Title | Per Rate | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul Cavazos | Grant Coordinator | 17.31 | 3 | | | | | | 3 | | | | | | | | | | | | | | | | | | | | | | | 6 |
| Pam Denney | City Secretary | 41.44 | | | | | | | 3 | | | | | | | | 1 | | | | | | | | 2 | | | | | 4 | 4 | 4 | 2 |
| Ruth Hernandez | Finance Director | 19.13 | | | | | | | | | 1 | | | | | | 2 | | | | | | | | | | | | | 1 | | 1 | 2 |
| Paula Reynolds | Administrative Assistant | 13.87 | 2 | | | | | | | 1 | | | | | | | 1 | | | | | | | | | | | | | 3 | 3 | 3 | 6 |

Certifications:

I, Manuel Abrego, certify that the named employees were on City of Los Fresnos payroll on the dates stated and performed tasks related to the Texas Community Development Project. These, dates, and amounts are correct to the best of my knowledge.

Manuel Abrego

Manuel Abrego    Date 02-01-01

Mayor, City of Los Fresnos