1          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
2                BROWNSVILLE DIVISION

3   PAULA REYNOLDS,              )
          Plaintiffs,           )
4                                )
    vs.                          )  CASE NO. B-03-056
5                                )
    THE CITY OF LOS FRESNOS,     )
6   TEXAS, TOM ANDREWS, MANUEL   )
    ABREGO, JUAN C. SIERRA, IDA  )
7   GARCIA, MIGUEL MENDOZA, RAY  )
    GARCIA, GONZALO ACEVEDO, AND )
8   PAM DENNY, INDIVIDUALLY AND IN)
    THEIR OFFICIAL CAPACITIES,   )
9        Defendants            )

10

11                    **ORAL DEPOSITION**

12                    **MANUEL ABREGO**

13                   DECEMBER 9, 2004

14

15       ORAL DEPOSITION OF MANUEL ABREGO, produced as a

16   witness at the instance of the Plaintiff and duly sworn,

17   was taken in the above-styled and numbered cause on the

18   9th day of December, 2004, from 10:12 a.m. to

19   11:46 a.m., before BRECK C. RECORD, Certified Shorthand

20   Reporter in and for the State of Texas, reported by

21   computerized stenotype machine at the offices of

22   Willette & Guerra, 1534 E. 6th Street, Suite 200,

23   Brownsville, Texas  78520, pursuant to the Federal Rules

24   of Civil Procedure and the provisions stated on the

25   record or attached hereto.

COPY

EXHIBIT
H

1                          **APPEARANCES**

2  *FOR PLAINTIFF:*

3      MR. J. ANDREW CASEY
       Rodriguez & Nicolas, L.L.P.
4      319 E. Elizabeth
       Brownsville, Texas  78520
5      Telephone: (956)574-9333 – Fax: (956)574-9337

6  *FOR PLAINTIFF:*

7      MS. TERI L. DANISH
       Rodriguez, Colvin, Chaney & Saenz, L.L.P.
8      4900 A-2 N. 10th Street
       McAllen, Texas  78504
9      Telephone: (956)686-1287 – Fax: (956)686-6197

10 FOR DEFENDANT:

11     MS. ANALISA FIGUEROA
       Willette & Guerra, L.L.P.
12     1534 6th Street, Suite 200
       Brownsville, Texas  78520
13     Telephone: (956)541-1846 – Fax: (956)541-1893

14 *FOR CITY OF LOS FRESNOS:*

15     MR. JOHN GEOFFREY WARBURTON
       Law Office of John Geoffrey Warburton
16     815 Ridgewood
       Brownsville, Texas  78520
17     Telephone: (956)459-0376

18 COURT REPORTER:  Mr. Breck Record, CSR

19

20

21

22

23

24

25

*Manuel Abrego - December 9, 2004*
*Examination by Ms. Danish*

11:17 1    serious.

11:17 2        Q    Okay.  What did you -- did they tell you what

11:17 3    the state may have to do serious?

11:17 4        A    Oh, yes.

11:17 5        Q    What did they tell you?

11:17 6        A    Well, the state could come in here and shut

11:17 7    the city down and they would literally run the city.

11:17 8        Q    Do you recall how much money was involved in

11:17 9    this program?

11:17 10       A    No, I don't.

11:17 11       Q    Do you remember when this second meeting

11:17 12   happened?

11:17 13       A    No, but I called a special meeting of city

11:17 14   council and had an agenda item and that was -- I advised

11:17 15   my council of the seriousness of it.

11:18 16       Q    So the city council was told about the serious

11:18 17   problems with The Home Program?

11:18 18       A    Yes.

11:18 19       Q    Okay.  You left your last term as mayor in May

11:18 20   of 2002.  Do you recall how much -- how much time before

11:18 21   you left in May of 2002 that this second meeting

11:18 22   happened?

11:18 23       A    A few months before.

11:18 24       Q    Okay.  Okay.  I'm gonna show you what's been

11:18 25   marked as Exhibit No. 3, Mr. Abrego, and it looks as

*Manuel Abrego - December 9, 2004*
*Examination by Ms. Danish*

11:26  1      Q    You don't remember.

11:26  2      A    I don't remember.

11:26  3      Q    You would agree with me, Mr. Abrego, that

11:26  4  falsifying documents that are supposed to be sent to the

11:27  5  state would be an illegal activity.

11:27  6      A    That's correct.

11:27  7      Q    Okay.  What finally happened to The Homes

11:27  8  Program, do you know?

11:27  9      A    No, ma'am.

11:27 10      Q    Was that issue resolved by the time you left

11:27 11  office in May of 2002?

11:27 12      A    No, ma'am.

11:27 13      Q    Have you ever had to give any testimony with

11:27 14  respect to The Homes Program to any state agency or

11:27 15  administrative agency?

11:27 16      A    Just meeting with the auditors.

11:27 17      Q    Have you ever had to sign an affidavit or

11:27 18  anything like that?

11:27 19      A    No, ma'am.

11:27 20      Q    Okay.  Did you ever travel to Austin to talk

11:27 21  to anybody about The Homes Program?

11:27 22      A    No.

11:27 23      Q    Are you aware of anybody from the City of Los

11:27 24  Fresnos that did?

11:27 25      A    I don't recall.

*Manuel Abrego - December 9, 2004*
*Examination by Ms. Danish*

11:27  1      Q    Okay.  Do you know whose decision it was to

11:27  2    terminate Paula Reynolds?

11:27  3      A    Yes.

11:27  4      Q    Whose decision was it?

11:27  5      A    Ida Garcia Cortez.

11:27  6      Q    Did she talk to you about Ms. Reynolds'

11:28  7    termination?

11:28  8      A    Yes.

11:28  9      Q    What did she tell you?

11:28 10      A    She came to me that she had information that

11:28 11    Paula had falsified her payroll hours.

11:28 12      Q    Okay.  Okay.  And did you say, "That's okay,

11:28 13    go ahead and fire her"?

11:28 14      A    No.

11:28 15      Q    What did you say?

11:28 16      A    I told her to verify to --

11:28 17      Q    Did Ms. -- I'm sorry.

11:28 18      A    -- to make sure that -- that everything is in

11:28 19    order.

11:28 20      Q    Okay.  Did how long before Ms. Reynolds was

11:28 21    fired did Ms. Garcia talk to you about her firing?

11:28 22      A    Oh, it was like eight hours or 16 hours.  Day

11:28 23    before or -- I mean.

11:28 24      Q    Okay.  It was maybe a day before she was

11:28 25    terminated?

*Manuel Abrego - December 9, 2004*
*Examination by Ms. Danish*

11:28  1      A    Yes.

11:28  2      Q    Okay.  When was the next time you talked to

11:29  3  Ms. Garcia about Paula's termination?

11:29  4      A    About a week later.

11:29  5      Q    And what do you recall discussing then?

11:29  6      A    I asked -- see, my concern is that I was upset

11:29  7  and said, well, if you document and you have all the

11:29  8  paperwork that she did do what she was claiming, just

11:29  9  talk to her and -- you know.  But a week later I talked

11:29 10  to her, to Ida Garcia Cortez, and I asked her did -- you

11:29 11  know, "Did you terminate her?"

11:29 12              And she said, "Yeah."

11:29 13              "Did you document everything?"

11:29 14              She says, "Yeah."

11:30 15              "Did you let her go because of that and

11:30 16  did you explain it to her?"  And that's when she told me

11:30 17  that she didn't have to explain it to her, that she was

11:30 18  an at-will employee and she didn't have to give a

11:30 19  reason.  I was very upset.

11:30 20      Q    Why?

11:30 21      A    Well, because I felt that when an employee

11:30 22  does wrong, an employee needs to be told what you did

11:30 23  wrong and you show them.

11:30 24      Q    And try to correct the problem?

11:30 25      A    Yes, ma'am.

BRECK RECORD, C.S.R.
TEL:  (956)455-6591  FAX:  (956)542-8893

*Manuel Abrego - December 9, 2004*
*Examination by Ms. Danish*

11:30  1          Q     Okay.  Would it be fair to say, Mr. Abrego,

11:30  2    that the way Ms. Reynolds was terminated did not

11:30  3    constitute due process, as you understand it?

11:30  4          A     I don't know.  And the thing is that the mayor

11:30  5    doesn't get involved with personnel.

11:30  6          Q     Sure.  Sure.

11:30  7          A     It's the city administrator and Garcia was the

11:30  8    city administrator.

11:31  9          Q     If Ms. Reynolds had never been given an

11:31 10    opportunity to explain what happened with the Paysmart

11:31 11    situation, do you think that would have been fair?

11:31 12          A     If she was -- excuse me?

11:31 13          Q     If she wasn't able to give her side of the

11:31 14    story on Paysmart issue, do you think that would have

11:31 15    been fair?

11:31 16          A     No, I don't believe so.

11:31 17          Q     Okay.  Do you think it would be fair if

11:31 18    Ms. Garcia did nothing to verify whether or not what she

11:31 19    accused Ms. Reynolds of doing actually happened?

11:31 20          A     No.

11:31 21          Q     Do you think it would be fair if, in fact,

11:31 22    Ms. Reynolds did what she was told but was fired anyway?

11:31 23          A     No.

11:31 24          Q     Does the mayor pro tem generally terminate

11:31 25    employees?

*Manuel Abrego – December 9, 2004*
*Examination by Ms. Danish*

11:35  1         A    I don't recall.

11:35  2         Q    Sure.  Did anybody else ever make any comments

11:35  3    to you about Paula in connection with taking money from

11:35  4    the city or doing something that she wasn't supposed to

11:35  5    do while she was employed by the city?

11:35  6         A    No, ma'am.

11:35  7         Q    Okay.  You're aware, Mr. Abrego, that there

11:35  8    were some problems between Pam Denny and Paula Reynolds,

11:35  9    correct?

11:35 10         A    Yes, ma'am.

11:35 11         Q    Okay.  Did you ever have an opportunity to

11:36 12    observe Paula Reynolds in her job duties?

11:36 13         A    Yes.

11:36 14         Q    Okay.  When would you have an opportunity to

11:36 15    observe her?

11:36 16         A    When I would have to go in and work on some

11:36 17    paperwork.

11:36 18         Q    In your role as mayor?

11:36 19         A    Yes.

11:36 20         Q    Okay.  Did you ever have any concerns about

11:36 21    Paula's performance?

11:36 22         A    Not serious.

11:36 23         Q    Okay.

11:36 24         A    Overall, she was a good employee.

11:36 25         Q    Okay.

1

```
1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
2                          BROWNSVILLE DIVISION

3    PAULA REYNOLDS,                    )
          Plaintiffs,                   )
4                                       )
     vs.                                ) CASE NO. B-03-056
5                                       )
     THE CITY OF LOS FRESNOS,           )
6    TEXAS, TOM ANDREWS, MANUEL         )
     ABREGO, JUAN C. SIERRA, IDA        )
7    GARCIA, MIGUEL MENDOZA, RAY        )
     GARCIA, GONZALO ACEVEDO, AND       )
8    PAM DENNY, INDIVIDUALLY AND IN)
     THEIR OFFICIAL CAPACITIES,         )
9         Defendants                    )

10

11                        ORAL DEPOSITION

12                       IDA GARCIA CORTEZ

13                       DECEMBER 8, 2004

14

15        ORAL DEPOSITION OF IDA GARCIA CORTEZ, produced as a

16   witness at the instance of the Plaintiff and duly sworn,

17   was taken in the above-styled and numbered cause on the

18   8th day of December, 2004, from 4:19 p.m. to 6:07 p.m.,

19   before BRECK C. RECORD, Certified Shorthand Reporter in

20   and for the State of Texas, reported by computerized

21   stenotype machine at the offices of Willette & Guerra,

22   1534 E. 6th Street, Suite 200, Brownsville, Texas

23   78520, pursuant to the Federal Rules of Civil Procedure

24   and the provisions stated on the record or attached

25   hereto.
```

COPY

EXHIBIT

I

BRECK RECORD, C.S.R.
TEL:   (956)455-6591   FAX:   (956)542-8893

*Oral Deposition - Ida Garcia Cortez*
*December 8, 2004*

1                      **APPEARANCES**

2  *FOR PLAINTIFF:*

3      MR. J. ANDREW CASEY
       Rodriguez & Nicolas, L.L.P.
4      319 E. Elizabeth
       Brownsville, Texas  78520
5      Telephone: (956)574-9333 - Fax: (956)574-9337

6  *FOR PLAINTIFF:*

7      MS. TERI L. DANISH
       Rodriguez, Colvin, Chaney & Saenz, L.L.P.
8      4900 A-2 N. 10th Street
       McAllen, Texas  78504
9      Telephone: (956)686-1287 - Fax: (956)686-6197

10 FOR DEFENDANT:

11     MS. ANALISA FIGUEROA
       Willette & Guerra, L.L.P.
12     1534 6th Street, Suite 200
       Brownsville, Texas  78520
13     Telephone: (956)541-1846 - Fax: (956)541-1893

14 COURT REPORTER:  Mr. Breck Record, CSR

15

16

17

18

19

20

21

22

23

24

25

*Ida Garcia Cortez - December 8, 2004*
*Examination by Ms. Danish*

17:40  1     Q    Was Pam Denny ever called into executive

17:40  2  session?

17:40  3     A    She's been called for -- we have -- well, I

17:41  4  don't know.  I don't know.

17:41  5     Q    Sitting here today, you can't remember one way

17:41  6  or the other?

17:41  7     A    I can't remember.

17:41  8     Q    Okay.  In January of 2002, do you recall an

17:41  9  executive session where Paula Reynolds was present where

17:41  10  the missing time sheets were discussed?

17:41  11     A    No.

17:41  12     Q    You were the person who made the decision to

17:41  13  terminate Paula; is that right?

17:41  14     A    Yes.

17:41  15     Q    Okay.  Did you get input from anybody when you

17:41  16  made that decision?

17:41  17     A    No.  To make my decision?

17:41  18     Q    Yes.

17:41  19     A    No.

17:41  20     Q    What did you base that decision on?

17:41  21     A    It was accumulation of previous incidents and

17:41  22  our financial standing.  It was a decision made -- at

17:41  23  the very end, it was just a decision made that we

17:41  24  couldn't afford the position, we didn't need her

17:42  25  position, and we were not going to replace it.  But it

*Ida Garcia Cortez - December 8, 2004*
*Examination by Ms. Danish*

17:42  1    was just little things that happened previous to the --

17:42  2    during the time that I served as interim that I just

17:42  3    decided one day we can't afford this position and I'm

17:42  4    just -- I'm not gonna deal with this anymore.

17:42  5        Q    How much did Ms. Reynolds make?

17:42  6        A    I don't know.

17:42  7        Q    Well, did you look at the salaries of

17:42  8    employees if you were concerned about finances to

17:42  9    determine where you could make a savings?

17:42 10        A    It was a substantial amount.  I'm guessing it

17:42 11    was anywhere between 15 and 25,000.  I know that's a big

17:42 12    range, but it was somewhere there; so, it was a savings

17:42 13    to the city.

17:42 14        Q    Did you discuss with Ms. Denny the fact that

17:42 15    you were thinking about terminating Ms. Reynolds?

17:42 16        A    No.

17:42 17        Q    When did you first start thinking about

17:42 18    terminating Ms. Reynolds?

17:42 19        A    That day.

17:42 20        Q    The day that you fired her?

17:42 21        A    Yes.

17:42 22        Q    Okay.  My understanding is that it was

17:42 23    February 7th of 2002?

17:43 24        A    It was 2002.

17:43 25        Q    Okay.  What happened on February 7th of 2002

17:43 1    that made you decide, "You know, today, I'm gonna fire

17:43 2    Paula Reynolds"?

17:43 3        A    The final thing that happened that day was

17:43 4    I -- I was told that Paysmart had questioned something

17:43 5    Paula had done.  And I had recently previously suspended

17:43 6    her a day without pay.  And I don't know when it was,

17:43 7    but I'm guessing it was during Christmas time or right

17:43 8    after Christmas time.  And when I did suspend her a day

17:43 9    without pay for calling an employee --

17:43 10        Q    A bitch?

17:43 11        A    -- an obscene name -- I think it was bitch --

17:43 12    in front of a customer, I just thought that was

17:44 13    something that we could not allow, because citizens are

17:44 14    our customers and we're responsible -- we answer to

17:44 15    them.  And sitting as a city administrator in my

17:44 16    position, I felt that she needed to be reprimanded for

17:44 17    that.  And so she got a day without pay.  She agreed to

17:44 18    it and we sat and we talked about it.  But she couldn't

17:44 19    afford the dock of pay during that pay period.  And I

17:44 20    agreed to let her take it off the next pay period.  I

17:44 21    was very lenient with her about her taking it the

17:44 22    following pay period.  She begged that she couldn't

17:44 23    afford it, her husband wasn't making money, and she

17:44 24    needed that money; so, I'm thinking it was around

17:44 25    Christmas time.  And so I told her okay, but do not

*Ida Garcia Cortez - December 8, 2004*
*Examination by Ms. Danish*

17:44 1    forget to dock yourself the next pay period.  She took

17:44 2    the day that she was supposed to.  And later Paysmart

17:45 3    had informed us that they asked her about the -- I don't

17:45 4    know what it said on the time sheet.  She didn't work

17:45 5    one day and -- well, she didn't work several days, but

17:45 6    this certain one day, they asked her what to do with

17:45 7    that day that she took off and she said, "Oh, no, it's

17:45 8    just for the record, but you still pay me."  So, to me,

17:45 9    that was stealing of a day.

17:45 10        Q    Did you talk to someone from Paysmart on the

17:45 11   day that she was terminated?

17:45 12        A    No.

17:45 13        Q    When did you talk to someone from Paysmart?

17:45 14        A    I never talked to anybody from Paysmart.

17:45 15        Q    So what you've got with respect to the alleged

17:45 16   problem at Paysmart was somebody else telling but

17:45 17   Paysmart?

17:45 18        A    Correct.

17:45 19        Q    Who told you about Paysmart?

17:45 20        A    Yolanda Perez.

17:45 21        Q    And who was Yolanda Perez?

17:45 22        A    She's the assistant city secretary.

17:46 23        Q    Okay.  And you learned about this from Yolanda

17:46 24   on the day that you fired Ms. Reynolds?

17:46 25        A    Yes.

*Ida Garcia Cortez - December 8, 2004*
*Examination by Ms. Danish*

17:46  1      Q    Okay.  Did you do anything to verify whether

17:46  2  or not what Yolanda was telling you was true?

17:46  3      A    No.

17:46  4      Q    Did you think it was important before you

17:46  5  terminated somebody to determine whether or not it was

17:46  6  true the reason that you decided that day to do it?

17:46  7      A    No, because I made my decision.  It was

17:46  8  just -- everything was just in my head and I just

17:46  9  decided we don't need this position.  I was tired of the

17:46 10  pettiness and the city could definitely use that money

17:46 11  that we were using on Paula and never replace that

17:46 12  position.

17:46 13      Q    Did you ever give Ms. Reynolds any verbal

17:46 14  warnings about these petty problems?

17:46 15      A    Yes.

17:46 16      Q    Did you document those in her personnel file?

17:46 17      A    Verbal, no.  I documented only the one where

17:47 18  she got suspended a day.

17:47 19      Q    For that one day.  Are you aware that the

17:47 20  policy manual says that you're supposed to document even

17:47 21  verbal discussions with employees?

17:47 22      A    No.

17:47 23      Q    Okay.  And other than that one wherein

17:47 24  reprimand, are you aware of any other written reprimands

17:47 25  that you gave Ms. Reynolds before you decided to

CAUSE NO. 2002-05-1879-B

| | | |
|---|---|---|
| PAULA REYNOLDS | § | IN THE 138TH DISTRICT COURT |
| v. | § | OF |
| THE CITY OF LOS FRESNOS | § | CAMERON COUNTY, TEXAS |

### AFFIDAVIT OF PAULA REYNOLDS

BEFORE ME, the undersigned Notary Public, appeared Paula Reynolds, and after having been duly sworn, stated the following:

> My name is Paula Reynolds. I am over 18 years of age, of sound mind, and competent to make this affidavit. I have never been convicted of a crime involving moral turpitude, and the facts stated below are true and within my personal knowledge.
>
> In approximately December 2000, I reported to Interim Police Chief of Police Adrian Cabrera that City Secretary Pam Denny improperly charged a radar detector to her City of Los Fresnos credit card. Mr. Cabrera and I do not have a personal or social relationship, and I was speaking to him in his capacity as Interim Chief of Police. During that same month, I also reported Ms. Denny's improper use of the City's credit card to then-Mayor Manuel Abrego, Finance Director Ruth Hernandez and Councilwoman Ida Garcia-Cortez.
>
> I was terminated from my position with the City of Los Fresnos in February 2002 by Ida Garcia-Cortez. When I asked Ms. Garcia-Cortez why I was being terminated, she told me there was no reason. She stated that I was an at-will employee and that the City did not need a reason to terminate my employment. I was never told that I was being terminated for performance-related reasons.

_____
PAULA REYNOLDS

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the 12 day of February, 2003, to certify which witness my hand and seal of office.

_____
Notary Public in and for
The State of TEXAS

JANET KAY BRASHEAR
Notary Public, State of Texas
My Commission Expires
September 28, 2005



EXHIBIT
J



EXHIBIT
1

January 17, 2001

To whom it may concern:

The following are a few examples of why I have no confidence in Pam Denny.

1. Her unauthorized use of the city credit card for the purchase of one or more personal items, In my opinion, was a highly irresponsible, inexcusable, criminal action, which constitutes theft and misappropriation of entrusted public funds.

2. Her unauthorized use of the City's Sam's Membership card for personal use and benefit to her family members.

3. It has come to my attention that Mrs. Denny has on several occassions has taken personal and or sick leave from work, but has failed to make any notation of it. This important and fair procedure is to be done so as to be docked or balanced out for that time. On those occassions she claims all 40 hours as regular time worked, therefore, allowing for the build-up of her sick and leave time to be paid at a later date. In my opinion, this inexcusable action is again an example of theft in the form of time and pay using public funds.

4. As the head of her department, Mrs. Denny is charged with, and is responsible for the daily support of her subordinate staff. She is also charged with maintaining and enhancing the moral of her subordinate staff, in part by setting the tone and example for the office work enviroment. It is blantantly evident that Mrs. Denny has failed miserably in these crucial responsibilities. These failures are a direct reflection of the poor management style that Mrs. Denny implements.

5. At the September 26th city council meeting Mrs. Pam Denny took it upon herself to alienate and discriminate against several hispanic people. Mrs. Denny stated to them as they were arriving, that they could not sit at the first two rows of chairs closest to the council table due to them being "reserved". Just before the start of the meeting it was noticed that anglo americans with close ties to Mrs. Denny, were sitting in the "reserved" seating area. It is not the policy of this city to allow for the reserving of seats for anyone other than handicapped people that give proper anvanced notice. This action that was taken is a pending, possible lawsuit for the city.

These are a few of my concerns with Pam Denny, if you have any questions please do not hesitate to call me.

Ida Garcia



EXHIBIT
K

DEFENDANT'S
EXHIBIT
4

EXHIBIT
9

MORRIS ATLAS
ROBERT L. SCHWARZ
GARY GURWITZ
CHARLES C. MURRAY
A. KIRBY CAVIN
MIKE MILLS
MOLLY THORNBERRY
FREDERICK J. BIEL
REX N. LEACH
LISA POWELL
STEPHEN L. CRAIN
O.C. HAMILTON, JR.
VICKI M. SKAGGS
RANDY CRANE
DAN K. WORTHINGTON
VALORIE C. GLASS
HECTOR J. TORRES
SOFIA A. RAMON
RAMONA K. KANTACK
DANIEL G. GURWITZ
DAVID E. GIRAULT
JOSÉ CANO
ADRIANA H. CÁRDENAS
GREGORY S. KAZEN
PATRICIA S. RUM

**ATLAS & HALL, L.L.P.**
ATTORNEYS AT LAW
PROFESSIONAL ARTS BUILDING • 818 PECAN
P.O. BOX 3725
McALLEN, TEXAS 78502-3725
(956) 682-5501
FAX (956) 686-6109

January 19, 2001

*Writer's Direct Number:*
(956) 632-8222

Ms. Pam Denny
City Secretary &
Tax Assessor/Collector
City of Los Fresnos
200 N. Brazil
Los Fresnos, Texas 78566

Via Certified Mail No. Z 149 885 740
Return Receipt Requested
& Via Telecopier

Re:    Notice of Allegations of Incompetency, Corruption, Misconduct or Malfeasance
       in Office, and Notice of Opportunity to Respond

Dear Ms. Denny:

Members of the Board of Aldermen of the City of Los Fresnos have requested that we provide you with notice of certain charges or claims regarding your conduct as a municipal officer of the City of Los Fresnos. We understand that you occupy the office of City Secretary and Tax Assessor/Collector, both of which are classified as municipal offices under Chapter 22, Texas Local Government Code.

Under §22.007(a), Texas Local Government Code, a municipal officer may be removed from office for incompetency, corruption, misconduct, or malfeasance after providing the officer with due notice and an opportunity to be heard. The following is a list of charges and/or complaints regarding your conduct in office which have been provided to us by members of the Board of Aldermen:

"1.    Her unauthorized use of the city credit card for the purchase of one or more personal items. In my opinion, was a highly irresponsible, inexcusable, criminal action, which constitutes theft and misappropriation of entrusted public funds.

Mrs. Denny charged $405.00 to the City of Los Fresnos Visa card on November 13, 2000 while shopping on the internet from her residence. She did not reimburse the City of Los Fresnos until December 7, 2000 after it was brought to her attention.



EXHIBIT

L

January 19, 2001
Page 2

2.    Her unauthorized use of the City's Sam's Membership card for personal use and benefit to her family members.

Mrs. Denny has placed her immediate family members (Kenneth Denny, Melissa Denny, Douglas Denny, on the City of Los Fresnos account. I believe this is a personal gain on her part and is immoral. The City of Los Fresnos was neither aware of this fact, nor was it authorized.

3.    It has come to my attention that Mrs. Denny has on several occasions has taken personal and/or sick leave from work, but has failed to make any notation of it. This important and fair procedure is to be done so as to be docked or balanced out for that time. On those occasions she claims all 40 hours as regular time worked, therefore, allowing for the build-up of her sick and leave time to be paid at a later date. In my opinion, this inexcusable action is again an example of theft in the form of time and pay using public funds.

4.    As the head of her department, Mrs. Denny is charged with, and is responsible for the daily support of her subordinate staff. She is also charged with maintaining and enhancing the moral of her subordinate staff, in part by setting the tone and example for the office work environment. It is blatantly evident that Mrs. Denny has failed miserably in these crucial responsibilities. These failures are a direct reflection of the poor management style that Mrs. Denny implements.

5.    At the September 26th city council meeting Mrs. Pam Denny took it upon herself to alienate and discriminate against several hispanic people. Mrs. Denny stated to them as they were arriving, that they could not sit at the first two rows of chairs closest to the council table due to them being "reserved". Just before the start of the meeting it was noticed that anglo americans with close ties to Mrs. Denny, were sitting in the "reserved" seating area. It is not the policy of this city to allow for the reserving of seats for anyone other than handicaped people that give proper advanced notice. This action that was taken is a pending, possible lawsuit for the city.

6.    Blue Cross/Blue Shield Insurance: Health insurance for all City of Los Fresnos employees was briefly cancelled due to Mrs. Denny's actions.

7.    The misinformation to the City Council and employees of the City of Los Fresnos: Mrs. Denny advised the City Council of Los Fresnos to place two (II) employees to part-time status because of budget considerations. Mrs. Denny informed the City Council that the employees would continue to receive medical/health insurance when, in truth, it is against Blue Cross/Blue Shield policy to insure part-time employees."

January 19, 2001
Page 3

Supporting documentation of these allegations is attached for your review.

The Board of Alderman may also remove a municipal officer elected by the governing body if the governing body lacks confidence in a municipal officer. The removal is effective only if two -thirds of the elected aldermen vote in favor of a resolution declaring the lack of confidence.

Please be advised that the Board of Aldermen of the City of Los Fresnos has called a special meeting, to be held at 7:30 pm on Tuesday, January 30, 2001, in the City Council Chambers, City Hall, Los Fresnos, Texas. At that meeting, you will be provided an opportunity to respond to the foregoing charges regarding your conduct in office.

Very truly yours,

ATLAS & HALL, L.L.P.

By: David E. Girault

DEG:vm

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
2                    BROWNSVILLE DIVISION

3    PAULA REYNOLDS,               )
           Plaintiffs,             )
4                                  )
     vs.                           )  CASE NO. B-03-056
5                                  )
     THE CITY OF LOS FRESNOS,      )
6    TEXAS, TOM ANDREWS, MANUEL    )
     ABREGO, JUAN C. SIERRA, IDA   )
7    GARCIA, MIGUEL MENDOZA, RAY   )
     GARCIA, GONZALO ACEVEDO, AND  )
8    PAM DENNY, INDIVIDUALLY AND IN)
     THEIR OFFICIAL CAPACITIES,    )
9          Defendants             )

10

11                    ORAL DEPOSITION

12                   JUAN CARLOS SIERRA

13                   DECEMBER 8, 2004

14

15        ORAL DEPOSITION OF JUAN CARLOS SIERRA, produced as

16   a witness at the instance of the Plaintiff and duly

17   sworn, was taken in the above-styled and numbered cause

18   on the 8th day of December, 2004, from 10:16 a.m. to

19   11:11 a.m., before BRECK C. RECORD, Certified Shorthand

20   Reporter in and for the State of Texas, reported by

21   computerized stenotype machine at the offices of

22   Willette & Guerra, 1534 E. 6th Street, Suite 200,

23   Brownsville, Texas  78520, pursuant to the Federal Rules

24   of Civil Procedure and the provisions stated on the

25   record or attached hereto.
```

COPY



EXHIBIT
M

1                            **APPEARANCES**

2    *FOR PLAINTIFF:*

3          MR. HENRI E. NICOLAS, JR.
           MR. J. ANDREW CASEY
4          Rodriguez & Nicolas, L.L.P.
           319 E. Elizabeth
5          Brownsville, Texas  78520
           Telephone: (956)574-9333 - Fax: (956)574-9337
6
     FOR DEFENDANT:
7
           MS. ANALISA FIGUEROA
8          Willette & Guerra, L.L.P.
           1534 6th Street, Suite 200
9          Brownsville, Texas  78520
           Telephone: (956)541-1846 - Fax: (956)541-1893
10
     *FOR CITY OF LOS FRESNOS:*
11
           MR. JOHN GEOFFREY WARBURTON
12         Law Office of John Geoffrey Warburton
           815 Ridgewood
13         Brownsville, Texas  78520
           Telephone: (956)459-0376
14
     COURT REPORTER:  Mr. Breck Record, CSR
15

16

17

18

19

20

21

22

23

24

25

*Juan Carlos Sierra - December 8, 2004*
*Examination by Mr. Casey*

10:27  1   this incident?

10:28  2        A    No, sir, I'm not.

10:28  3        Q    Do you know how the mayor was informed of the

10:28  4   incident?

10:28  5        A    No, I can't remember how.  I just remember him

10:28  6   mentioning it to me.

10:28  7        Q    Are you aware of any allegations of

10:28  8   Mrs. Reynolds stealing money from the City of Los

10:28  9   Fresnos?

10:28 10        A    No.

10:28 11        Q    Are you aware of any allegations of

10:28 12   Mrs. Reynolds overpaying herself?

10:28 13        A    No, sir.

10:28 14        Q    If there were allegations that Mrs. Reynolds

10:28 15   overpaying herself, would that be a matter that an

10:28 16   alderman or council member should be made aware of?

10:28 17        A    Yes.

10:28 18        Q    And it was never brought up to your attention?

10:28 19        A    Never.

10:29 20        Q    What action did the board of aldermen take

10:29 21   regarding Pam Denny's use of the credit card?

10:29 22        A    We had an open meeting.  She was -- she had

10:29 23   been placed on the agenda.  And, of course, there was a

10:29 24   lot of people from the community there.  I was one of

10:29 25   the ones that suggested that the Texas Rangers and the

*Juan Carlos Sierra - December 8, 2004*
*Examination by Mr. Casey*

10:29  1    district attorney's office should get involved into

10:29  2    forming an investigation.  I had made a motion and no

10:29  3    one seconded my motion and it died that same evening.

10:29  4    Nothing else was done after that.  She's still there as

10:30  5    the city secretary for Los Fresnos.

10:30  6            Q    Do you still believe that the Texas Rangers

10:30  7    and the DA office would be the appropriate authorities

10:30  8    to report this action to?

10:30  9            A    Yes.  Yes, I do.

10:30  10           Q    At any time prior to Mrs. Reynold's

10:30  11   termination, were you aware that the city wanted or

10:30  12   needed to terminate her employment?

10:30  13           A    Never.

10:30  14           Q    Did you ever tell Mrs. Reynolds to stay home

10:30  15   from work because if she showed up she'd be fired?

10:30  16           A    Never.

10:30  17           Q    Were you ever present when somebody else told

10:30  18   Mrs. Reynolds to stay home?

10:30  19           A    No.

10:30  20           Q    Were you ever present when somebody else told

10:30  21   Mrs. Reynolds she was going to be terminated?

10:30  22           A    No.

10:30  23           Q    Are you aware of anybody breaking into

10:30  24   Mrs. Reynold's office while she was away from her

10:31  25   office?